Robert S. **TURNER**, Petitioner–Appellant,

v.

Charles D. **MARSHALL**, Warden; Attorney General of the State of California, Respondents–Appellees.

No. 96–56462.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 3, 1997.

Decided July 29, 1997.

As Amended Sept. 22, 1997.

Richard D. Cleary, Los Angeles, CA, for Petitioner–Appellant.

David F. Glassman, Deputy Attorney General, State of California, Los Angeles, CA, for Respondents–Appellees.

Before: FLETCHER, PREGERSON, and D.W. NELSON, Circuit Judges.

D.W. NELSON, Circuit Judge:

California state prisoner Robert Turner appeals the district court's denial of his petition for a writ of habeas corpus. Turner argues that the State engaged in purposeful

discrimination in selecting his trial jury. He further claims that the state trial court committed prejudicial error when it allowed the jury to hear the readback of testimony in the absence of the defendant or his counsel.

We have jurisdiction pursuant to 28 U.S.C. §§ 1291 & 2253, and we affirm in part and reverse in part. Although we agree that the readback of testimony was harmless error, we believe that a comparative analysis of a challenged and an unchallenged juror indicates racial discrimination in the jury selection process. Accordingly, we vacate the district court's denial of Turner's petition.

## I. Factual and Procedural Background

In March 1990, Turner was tried in California Superior Court for first degree felony murder, robbery, and burglary. During jury selection, Turner's counsel struck 19 prospective jurors, including two African–American men. The prosecutor used five out of the nine peremptory challenges she exercised to exclude African–Americans from the jury. Although she could have employed additional peremptory challenges, the prosecutor left four African–American women on the jury panel. However, when the jury was seated, all of the African–American men in the jury pool had been challenged or excused. Turner objected to the prosecution's use of peremptories under *People v. Wheeler*, 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978), which holds that the discriminatory use of peremptory challenges violates the California Constitution. But the trial judge concluded that Turner had not established a "pattern of individual discrimination" and declined to inquire into the prosecutor's motives.

Turner's trial lasted for two weeks, and the jury began its deliberations on March 15, 1990. On March 19, the jury requested the readback of testimony by police department criminalist Lee Mann, who had presented the crucial blood evidence linking Turner to the murder. The court reporter read Mann's testimony to the jury in the jury room on March 19–20. The record reflects that neither Turner nor his counsel were in the jury room for the readback, and that neither of them had waived the right to be present.

On March 21, 1990, the jury entered a guilty verdict on all three charges, determined that Turner had used a deadly weapon in committing the offenses, and found that he had committed murder in the course of committing the burglary and robbery. Turner received a sentence of life imprisonment without the possibility of parole on the murder count, and the trial court stayed imposition of sentence as to the burglary and robbery. The California Court of Appeal affirmed Turner's conviction, and the California Supreme Court denied his petition for review.

Turner then filed a petition for a writ of habeas corpus in federal district court, which was denied. On appeal, this court ruled that Turner had established a prima facie case of racial discrimination in jury selection and concluded that the readback of Mann's testimony amounted to constitutional trial error. *Turner v. Marshall,* 63 F.3d 807, 814–15 (9th Cir.1995) [*Turner I* ]. Accordingly, we vacated the denial of Turner's petition and remanded to the district court for an evidentiary hearing to develop Turner's *Batson* claim and to determine whether the state trial court's violation of his Confrontation Clause rights was prejudicial error. *Id.* at 820.

On April 25, 1996, a magistrate judge conducted an evidentiary hearing at which the prosecutor, the court reporter from Turner's trial, a trial juror, and Turner himself testified. The prosecutor acknowledged that she had no independent recollection of the five African–American jurors in question, but she offered explanations for her challenges derived from the voir dire transcript and her "partial" notes. Although the court reporter and the juror could not remember details of the readback of Mann's testimony, they recalled nothing remarkable about it. The questioning of Turner confirmed that he had neither heard the readback nor waived his right to be present. After hearing this testimony, the magistrate judge concluded that no *Batson* violation had occurred and that the readback was harmless error. The district court adopted the magistrate's findings and dismissed the petition. Turner subsequently was granted a certificate of appeala-

bility to challenge the denial of his habeas petition.

## II. Standard of Review

■■■ We review the district court's decision to deny Turner's habeas petition de novo. *Johnson v. Vasquez,* 3 F.3d 1327, 1329 (9th Cir.1993). We accord substantial deference to the findings of fact underlying the district court's ruling on racial discrimination in jury selection and will overturn these findings only to correct clear error. *See Hernandez v. New York,* 500 U.S. 352, 364, 111 S.Ct. 1859, 1868–69, 114 L.Ed.2d 395 (1991); *Batson v. Kentucky,* 476 U.S. 79, 98 n. 21, 106 S.Ct. 1712, 1724 n. 21, 90 L.Ed.2d 69 (1986); *Johnson,* 3 F.3d at 1329.

## III. Discussion

### A. The Adequacy of the *Batson* Hearing

We note at the outset that the procedural posture of this case, and the years intervening between voir dire and the evidentiary hearing, are indicative of a larger problem with the *Batson* rule in practice. Because no factfinder has had the benefit of contemporaneous explanations from the prosecutor, we have before us only a minimally adequate record to examine for evidence of discriminatory purpose. We believe that the trial judge who observes jury selection firsthand is best suited to conduct this inquiry. Had the trial court required the prosecutor to articulate her reasoning at the time that Turner raised questions about the State's use of peremptories, the record would have provided a richer basis for our decision.

Our review is further hindered by the prosecutor's failure to prepare for the evidentiary hearing. Although we do not fault the prosecutor for her diminished memory six years after jury selection, we note that she testified that she had not reviewed the voir dire transcript in preparation for the evidentiary hearing and that she was "caught up" in another trial. We are fully cognizant of the weighty caseload government attorneys carry, but we believe that the federal court's inquiry into a potential constitutional violation deserved the prosecutor's full attention.

■■■ Although both the lack of a contemporaneous explanation and the prosecutor's limited recollection are troubling, we conclude that the transcripts of voir dire and the evidentiary hearing yield a sufficient basis for review. Our decisions in *United States v. Thompson,* 827 F.2d 1254, 1262 (9th Cir. 1987), and *United States v. Alcantar,* 897 F.2d 436, 439 (9th Cir.1990), do not control. In those cases we noted that the passage of time could render a *Batson* hearing "meaningless." *See Thompson,* 827 F.2d at 1262. But there we contemplated a situation in which "no evidence was presented" and no information about excluded and accepted jurors was available. *See Alcantar,* 897 F.2d at 438. Here, the prosecutor did not admit to a total inability to reconstruct the events of jury selection; she claimed that she generally could recall the trial and that reviewing the transcript had refreshed her recollection of voir dire, and she articulated explanations for each of the disputed challenges. Thus the defense has been afforded ample opportunity "to point out false factual assumptions, or improper motivations in the prosecution's explanations." *Id.*

Accordingly, we reject Turner's argument that the prosecutor failed to meet her burden of producing specific reasons for her challenges, and we proceed to examine the trial court's ultimate determination that the State did not engage in purposeful discrimination. *See Hernandez,* 500 U.S. at 359, 111 S.Ct. at 1866.

### B. Evidence of Purposeful Discrimination in the Jury Selection

■■■ We conclude that the district court clearly erred in accepting the prosecutor's explanation for striking African–American prospective juror Romeo McCain. We believe that the prosecutor's stated reasoning is revealed as pretextual in the light of a comparison between McCain and a nonminority juror who ultimately was empaneled.

■■■ A comparative analysis of jurors struck and those remaining is a well-established tool for exploring the possibility that facially race-neutral reasons are a pretext for

discrimination. Peremptory challenges "cannot be lawfully exercised against potential jurors of one race unless potential jurors of another race with comparable characteristics are also challenged." *Doss v. Frontenac,* 14 F.3d 1313, 1316–17 (8th Cir.1994); *see United States v. Chinchilla,* 874 F.2d 695, 698–99 (9th Cir.1989) (holding that a struck juror's place of residence was an inadequate explanation for a challenge because an unchallenged juror resided in the same location); *see also Devose v. Norris,* 53 F.3d 201, 204–05 (8th Cir.1995); *United States v. Sowa,* 34 F.3d 447, 452 (7th Cir.1994), *cert. denied,* 513 U.S. 1117, 115 S.Ct. 915, 130 L.Ed.2d 796 (1995); *Davidson v. Harris,* 30 F.3d 963, 965 (8th Cir.1994), *cert. denied,* 513 U.S. 1083, 115 S.Ct. 737, 130 L.Ed.2d 639 (1995); *Jones v. Ryan,* 987 F.2d 960, 973 (3d Cir.1993).

On the surface, McCain possesses all of the attributes of a classic prosecution juror. He testified that he served as a military policeman in Vietnam, that he was married with two small children, and that he worked as a production supervisor for Garrett Air Research. He also informed the court that he had a brother-in-law who was a DEA agent. At the evidentiary hearing, the prosecutor offered the following explanation for striking McCain:

> [H]e had a hesitancy toward looking at gruesome photographs that would [be] shown in a homicide case, such as this, with a blunt-force instrument trauma inflicted on the victim. This was a very brutal case, and he would not like to be part of looking at those photographs, which is a necessary job that the jurors have.

The prosecutor's concern about the photographic evidence is facially nondiscriminatory, but she also seated a white juror who was hesitant to view the photographs. Indeed, whereas McCain affirmed in his colloquy with the prosecutor that he would do his duty as a juror and look at the photographs, Rosemary Battaglia offered only an ambiguous "I guess" after similar questioning. We perceive no basis in the jurors' responses during voir dire upon which to distinguish the challenged and unchallenged juror:

*Romeo McCain*

Ms. Davidson: So you can look at pictures and not be in any way intimidated by the pictures?

Prospective Juror No. 8: No.

Ms. Davidson: Okay. Because you-some people, you know, we don't all come from the same background. And Vietnam was a terrible experience for you, I'm sure, but it toughened you up for other things, I'm sure. And the people that haven't had that experience it might not be okay to see pictures; for you it might be okay.

No problem?

Prospective Juror No. 8: Yes.

Ms. Davidson: What's that look I just got?

Prospective Juror No. 8: I'm thinking about I really wouldn't want to see them, the pictures.

Ms. Davidson: Well, good for you. Who wants to see pictures like that, if you're a normal human being.

If it's your job as a juror, though, you'd look at it?

Prospective Juror No. 8: Yes.

*Rosemary Battaglia*

Ms. Davidson: Is there anything about you that you think I should know?

Prospective Juror No. 3: I would have a problem looking at gory pictures. I just—I just am very squeamish about that type of thing.

...

Ms. Davidson: Well, that only -It's ghoulish to think that any of us want to sit there and look at unpleasant photographs, gruesome pictures of things. But as a juror, it's your duty to look at these photographs, if there are any photographs, because I don't want to ask you to prejudge the evidence—

Prospective Juror No. 3: Right.

Ms. Davidson: Okay, can you, as part of your duty, look at the photographs, even if it's unpleasant, because you understand we don't want people that are going to look at gory photographs—

Prospective Juror No. 3: I understand that.

Ms. Davidson: Okay.

Prospective Juror No. 3: I probably could but it would be really uncomfortable.

Ms. Davidson: Well, nobody is going to ask you to stare at anything or—you know, anything like that. So if it's for some purpose of evidence to look at a photograph, you can do that, right?

Prospective Juror No. 3: I guess.

Not only are their responses similar, but Battaglia expressed even greater reluctance to view the photographs.

We are mindful of the prosecutor's unequivocal statement at the evidentiary hearing that the *only* explanation she could offer for striking McCain was his reluctance to view the photographs:

Q: Sitting here today, do you recall any reason you challenged Mr. McCain, other than his—what you described as his reluctance to look at crime photographs?

A: No, I don't.

Q: Sitting here today, you don't have any recollection, do you, of why you changed your mind about Mr. McCain, do you?

A: I don't. I can only tell you the part of the photographs -

Thus, we do not confront a case in which the prosecutor offered several explanations for a peremptory strike, and a seated juror shares *some* of the same characteristics cited as justifications. *Compare United States v. Lewis,* 837 F.2d 415, 417 & n. 5 (9th Cir.1988) (concluding that there was a nondiscriminatory basis for a peremptory challenge where the decision to strike hinged on "the interplay of various factors" identified by the prosecutor and "no unchallenged juror possessed all the cited characteristics"). The arguments that the State has made since the evidentiary hearing do not form part of the prosecutor's explanation, and we conclude that she has not "put forward other reasons, in addition to the trait shared with the unchallenged juror[ ], which [would have] enhanced [her] credibility." *United States v. Alvarado,* 951 F.2d 22, 25 (2d Cir.1991).

The State insists that the prosecutor struck McCain, and not Battaglia, because McCain's status as a Vietnam veteran was in tension with his squeamishness. The magistrate judge agreed that his "hesitancy to view crime photographs appeared incongruous with his Vietnam War veteran background." The record does not, however, support the attribution of such a motive to the prosecutor. Although she questioned McCain about his experiences in Vietnam in conjunction with raising the subject of the photographs, the prosecutor suggested that his background might make it easier for him to view gruesome photographs. Indeed, the prosecutor's remarks about McCain's "admirable background" indicate that his military record made her *favorably* disposed towards him as a juror.[1]

The State conceded at oral argument that the prosecutor never explicitly identified any incongruity between McCain's military experience and his reluctance. But according to the State, "[t]he irony of his diffidence, in light of his military experience, was obvious." We see no indication that the prosecutor perceived any "irony" in McCain's responses; nor is any such irony apparent. Thus, we reject the State's argument that the import of McCain's status as a veteran was implicit. We also doubt that the prosecutor intended to invoke McCain's military experience when she stated that she "felt that he would not make a good juror on reflection—upon reflection of the kind of person that he was, even though he had an admirable background, he—that still wouldn't make him a good juror." Such vague musing simply does not suffice to explain a peremptory challenge questioned under *Batson.* We are of the firm conviction that no legitimate justification for the challenge was advanced. Because the reluctance to view photographic evidence was the only reason actually proffered for McCain's exclusion, and because the voir dire transcript does not support a contrary infer-

---

1. The State further claims that the facial expression the prosecutor observed McCain make was a reason for his dismissal. However, the prosecutor stated only that it was because of the facial expression that she elicited the information about McCain's reluctance to view the photographs. And she later indicated that his nonverbal communication to her established a rapport and showed that he was "reacting and responding" to her.

ence, we find the failure to challenge the similarly situated white juror to be fatal to the prosecutor's explanation.

■ We note that our decision in *Burks v. Borg*, 27 F.3d 1424 (9th Cir.1994), *cert. denied*, 513 U.S. 1160, 115 S.Ct. 1122, 130 L.Ed.2d 1085 (1995), is distinguishable. In *Burks*, this court recognized that *Batson* is not violated "whenever prospective jurors of different races provide similar responses and one is excused while the other is not." 27 F.3d at 1429. Our *Batson* jurisprudence has always been tempered by the understanding that counsel is entitled to "take into account tone, demeanor, facial expression, emphasis—all those factors that make the words uttered by the prospective juror convincing or not." *Id.* When challenged, however, a prosecutor must give some expression to those instincts. In *Burks*, for example, the prosecutor explained that he did not believe that the struck jurors would impose the death penalty. *Id.*

Although *Burks* supports a party's right to treat minority and nonminority jurors differently where there are subjective differences between them, this court also has recognized that subjective justifications for challenges may be vulnerable to a comparative attack. *See Alcantar*, 897 F.2d at 439 (explaining, when a juror was challenged because he appeared "angry," that "defense counsel could have attempted to show that other jurors were more angry than he[, which] would have demonstrated that the issue of anger may have been a cover for a racially-based decision"); *Thompson*, 827 F.2d at 1260 (not-

ing that defense counsel might be able to point out that a prosecutor's explanation, such as that a juror "looked sullen or glared at the prosecutor," is "pretextual because others similarly situated were allowed to serve"). Indeed, the *Burks* court itself made clear that a party cannot insulate an explanation from appellate review simply by couching it "in vague and subjective terms." *Burks*, 27 F.3d at 1429.

Moreover, the holding in *Burks* rested in part on the state trial court's contemporaneous inquiry into the prosecutor's reasons. *Id.* This court was reluctant to reverse the trial judge's findings on the basis of a "cold transcript" when the factfinder "was there to observe the jury selection—day in and day out for *six months*." *Id.* (emphasis added). In contrast, the posture of this case considerably undercuts the rationale for deferring to the trial court's findings.[2]

■ Finally, although the fact that the prosecutor accepted four African–Americans on the jury may be considered indicative of a nondiscriminatory motive, *id.*, it is not dispositive. *See Palmer v. Estelle*, 985 F.2d 456, 458 (9th Cir.1993) ("[A] trial court may consider, but may not rely solely on, the existence of Blacks on a jury when determining whether a prosecutor has violated *Batson*.").[3] Where the prosecutor's explanation for striking a minority juror is unsupported by the record, empaneling other minority jurors will not salvage her discredited justification.

---

2. The trial court's findings are accorded deference because the judge is presumed to have presided over jury selection and to have had the benefit of observing the conduct of voir dire. *See Jones v. Gomez*, 66 F.3d 199, 201 (9th Cir.1995) ("[T]he ultimate determination of whether the prosecutor acted with discriminatory intent [ ] is a question of fact which turns primarily on an assessment of credibility.") (citation and internal quotation omitted), *cert. denied*, —— U.S. ——, 116 S.Ct. 1437, 134 L.Ed.2d 559 (1996). Here, however, no factfinder has had the benefit of contemporaneous explanations from the prosecutor. Although the magistrate judge observed the demeanor of the prosecutor firsthand, he did so six years after jury selection took place in state court. Moreover, there is no state court finding to presume correct on habeas review. *See Purkett v. Elem*, 514 U.S. 765, 769, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995). The state trial

court determined only that Turner had not established a prima facie case of discrimination, and this court already reversed that finding. *Turner I*, 63 F.3d at 814.

3. In addition, the fact that the jury ultimately empaneled included several minority members does not mitigate the effect of a discriminatory peremptory challenge. There is no harmless error analysis with respect to *Batson* claims. *See Gray v. Mississippi*, 481 U.S. 648, 668, 107 S.Ct. 2045, 2056–57, 95 L.Ed.2d 622 (1987) (stating that among those constitutional rights so basic "that their infraction can never be treated as harmless error" is a defendant's "right to an impartial adjudicator, be it judge or jury") (citation and internal quotations omitted); *see also Vasquez v. Hillery*, 474 U.S. 254, 263, 106 S.Ct. 617, 623, 88 L.Ed.2d 598 (1986).

■ Accordingly, we conclude that a comparative analysis reveals racial reasons for the prosecutor's dismissal of McCain, and that the district court's finding to the contrary is clearly erroneous. *See Johnson,* 3 F.3d at 1331 ("When there is reason to believe that there is a racial motivation for the challenge, neither the trial courts nor we are bound to accept at face value a list of neutral reasons that are either unsupported in the record or refuted by it. Any other approach leaves *Batson* a dead letter.").[4] We are aware that our holding here places a heavy burden on the State to retry or release Turner. However, we agree with our colleagues on the Third Circuit that the remedy is a necessary one:

> Since we believe that the *Batson* Court placed the requirements of justice and equal protection above the burden placed on the [State] to retry the defendant before a jury from which no one has been excluded for a racially motivated reason, we conclude that the prosecution's failure to rebut [the defendant's] prima facie showing of racial discrimination as to one juror dictates the grant of a new trial. We recognize the burden placed on the [State] to retry [the defendant] after almost nine years have passed. Nevertheless, the intent of the Supreme Court in deciding *Batson* was to guarantee, both to the defendant desiring a jury trial and to the jury venirepersons, that the jury will be selected on a racially non-discriminatory basis.

*Harrison v. Ryan,* 909 F.2d 84, 88 (3d Cir. 1990).

## C. Readback of Testimony to the Jury

■ As to the effect of the readback of Mann's testimony, the record supports the district court's conclusion that Turner's absence from the jury room was harmless error. Habeas relief should be granted "[o]nly if the record demonstrates the jury's decision was substantially influenced by the trial error or there is grave doubt about whether an error affected a jury." *Hegler v. Borg,* 50 F.3d 1472, 1478 (9th Cir.) (citation and internal quotation omitted), *cert. denied,* — U.S. —, 116 S.Ct. 675, 133 L.Ed.2d 524 (1995); *see also Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 1721–22, 123 L.Ed.2d 353 (1993). Turner cannot establish "actual prejudice," and nothing in the witnesses' statements aroused "grave doubt" about whether the error had injurious effect. *See O'Neal v. McAninch,* 513 U.S. 432, 435, 115 S.Ct. 992, 994, 130 L.Ed.2d 947 (1995) (defining grave doubt to mean "that, in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error").

The court reporter explained that her general practice was to repeat testimony in a monotone, avoiding any emphasis or facial expression, that she had no reason to believe she deviated from that manner in Turner's case, and that she did not recall any extraneous communication with the jury. As in *Hegler,* the evidence produced at the hearing indicated that the court reporter read the testimony without inappropriate inflection or comment. *See* 50 F.3d at 1478; *cf. Lee v. Marshall,* 42 F.3d 1296, 1298 (9th Cir.1994) (finding that intrusion of two police officers into the jury room to set up a tape player was harmless error because "their entry was innocuous"); *United States v. Kupau,* 781 F.2d 740, 742 (9th Cir.1986) (finding error harmless where there was no indication that the jury and the case agent did not heed the judge's admonition that the agent was to be a "nonentity" while playing back taped evidence). And even though the testimony in question involved the key forensic evidence linking Turner to the murder, potent circumstantial evidence also supported the jury's verdict, including Turner's possession of property stolen from the victim on the night of the murder and his own inconsistent statements. There is no evidence of improper conduct or prejudicial impact, and we conclude that the district court did not clearly err in finding the error harmless.

---

4. Having reached this conclusion, we need not consider Turner's arguments concerning the remaining four prospective jurors. "[T]he striking of a single black juror for racial reasons violates the equal protection clause, even though other black jurors are seated, and even when there are valid reasons for the striking of some black jurors." *United States v. Battle,* 836 F.2d 1084, 1086 (8th Cir.1987); *see also United States v. Bishop,* 959 F.2d 820, 827 (9th Cir.1992).

### IV. Conclusion

For the foregoing reasons, we vacate the district court's denial of the writ of habeas corpus and remand with instructions to enter an order stating that Turner is entitled to a new trial.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**