**Randolph RANKINS, Petitioner,**

v.

**Tom CAREY, Warden Respondent.**

**No. EDCV 00–650 RT (E).**

United States District Court,
C.D. California.

May 1, 2001.

Randolph Rankins, Tehachapi, CA, In Pro Per.

Bill Lockyer, Attorney General of the State of California, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Senior Assistant Attorney General, Jeffrey J. Koch, Deputy Attorney General, Karl T. Terp, Deputy Attorney General, San Diego, CA, for Respondent.

### ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS.

TIMLIN, District Judge.

The court, Judge Robert J. Timlin, pursuant to 28 U.S.C. § 636 has read and considered petitioner Randolph Rankins ("Petitioner")'s petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (" § 2254") ("Petition"), respondent Tom Carey ("Respondent")'s answer, and Petitioner's traverse. The court has also read and considered the magistrate judge's Report and Recommendation ("R & R"), Respondent's Objections to the R & R, and the Supplemental Report and Recommendation ("Supplemental R & R"). Based on such consideration, the court adopts the magistrate judge's recommendation to grant a conditional writ of habeas corpus. However, the court does not agree entirely with the magistrate judge's analysis and concludes as follows:

### I.

### BACKGROUND

Petitioner was tried and convicted of robbery in violation of Cal.Penal Code § 211 in RSC No. PEF–000564 of the Consolidated Municipal/Superior Courts of Riverside County, California ("state court"). During jury selection, the prosecutor used a peremptory challenge to strike Patsean Malbrough ("Malbrough"), an African–American prospective juror. Counsel for Petitioner raised a *Batson* objection, contending that the prosecutor excused the prospective juror because she was African–American, the same race as the defendant.[1]

---

1. In *Batson v. Kentucky,* 476 U.S. 79, 86, 106 S.Ct. 1712, 1717, 90 L.Ed.2d 69 (1986), the Supreme Court held that the Equal Protection clause of the Fourteenth Amendment prohib- its a prosecutor from excluding members of the defendant's race from the jury because of their race. *See also People v. Wheeler,* 22 Cal.3d 258, 276–77, 148 Cal.Rptr. 890, 903,

 When a defendant raises a *Batson* objection, the defendant must make a prima facie showing that the prosecutor excused the prospective juror in question because of his or her race. *Batson*, 476 U.S. at 93–94, 106 S.Ct. at 1721–23. If the defendant makes such a showing, the prosecutor then must offer a race neutral reason for exercising the peremptory challenge. *Id.* at 97, 106 S.Ct. at 1723. If the prosecutor satisfies this burden, the trial court must determine whether the defendant has carried his burden of proving intentional discrimination. *Id.* at 98, 106 S.Ct. at 1723.

Although the trial court concluded that Petitioner had not made a prima facie showing of a discriminatory challenge as to Malbrough, it invited the prosecutor to state reasons for challenging her in order to create a record for appeal. The prosecutor stated he excused Malbrough because (1) "I excluded every single person so far that has been involved in education as a job .... I have bad luck with teachers" and (2) "four people [including Malbrough] have not given any other information other than what's on the blue form, I have excluded all of them as well ... as I find these people aren't very forthcoming with answers." Counsel for Petitioner argued that these reasons were pretextual because there was no evidence that Malbrough was a teacher and that Malbrough was not less forthcoming than other potential jurors during voir dire, but the trial court found that the prosecutor's decision to strike Malbrough was rational and not racially motivated.

Petitioner appealed his conviction and the California Court of Appeal ("Court of Appeal") affirmed. Petitioner argued on

appeal that by inviting the prosecutor to state his reasons for striking Malbrough and by finding those reasons to be rational and not racially motivated, the trial court implicitly found that Petitioner made a prima facie case. The Court of Appeal, relying on *People v. Welch*, 20 Cal.4th 701, 85 Cal.Rptr.2d 203, 976 P.2d 754 (1999), rejected this contention. In *Welch*, the California Supreme Court held that when a trial court finds no prima facie showing but nonetheless invites the prosecutor to justify the use of the peremptory challenge, there is no implied finding of a prima facie case. *Id.* at 746, 85 Cal. Rptr.2d at 232, 976 P.2d 754. Therefore, the Court of Appeal held that Petitioner's *Batson* challenge failed because he did not demonstrate a prima facie case. Alternatively, it held that the prosecutor's reasons for striking Malbrough were adequate, race neutral and not discriminatory.

Petitioner filed his Petition in this court pursuant to § 2254. The Petition was assigned to a magistrate judge pursuant to 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California. The magistrate judge concluded in his R & R that because the trial court proceeded through all the stages of the *Batson* analysis, the Court of Appeal should have considered moot the question whether Petitioner demonstrated a prima facie case. Addressing the merits of the *Batson* challenge, the magistrate judge determined that Petitioner met his burden of proving by clear and convincing evidence that the state court's findings that the prosecutor did not purposefully discriminate in exercising his challenge to Malbrough were based on an unreasonable determination of the facts in

583 P.2d 748 (1978) ("We conclude that the use of peremptory challenges to remove prospective jurors on the sole ground of group bias violates the right to trial by jury drawn

from a representative cross-section of the community under article I, section 16 of the California Constitution.").

light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2).

In the R & R, the magistrate judge did not address whether the Court of Appeal's holding that the prima facie case was not moot resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d)(1).[2] After reviewing the R & R, the court recommitted the matter to the magistrate judge to address this issue. In his Supplemental R & R, the magistrate judge concluded under federal law as clearly established in *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); *Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983), that the prima facie showing becomes moot once the prosecutor offers explanations for the peremptory challenge in question and the trial court has determined whether the challenge is motivated by intentional discrimination.

## II.

### *ANALYSIS*

**A. Was the Prima Facie Case Issue Before the State Appellate Court Moot?**

To grant a state prisoner's petition for a writ of habeas corpus, the court must find that the Court of Appeal, in affirming the trial court's decision, acted contrary to, or unreasonably applied, clearly established federal law, as determined by the Supreme Court, or made an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d). As an independent ground for upholding the trial court's denial of the *Batson* challenge, the Court of Appeal held that even though the record contained the prosecutor's reasons for striking Malbrough, the issue of the prima facie case was not moot and Petitioner failed to establish a prima facie showing of discrimination.

■ The court's first task is to determine whether the holdings of *Hernandez*, *Purkett*, and *Aikens* create a body of clearly established federal law, and if so, whether the Court of Appeal's decision was contrary to or involved an unreasonable application of such law, as determined by the U.S. Supreme Court. A state court decision is contrary to clearly established federal law if the state court either (1) applies a rule of law that is contrary to the law as stated by the Supreme Court; or (2) "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 1519–20, 146 L.Ed.2d 389 (2000).

■ A state court's decision involves an unreasonable application of federal law if either the state court (1) unreasonably applies the governing legal rule to the facts of the case; or (2) extends or fails to

---

**2.** Section 2254(d) provides:

An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.

extend a clearly established legal principal to a new context in a way that is objectively unreasonable. *See Van Tran v. Lindsey,* 212 F.3d 1143, 1150 (9th Cir.2000) (citing *Williams,* 529 U.S. at 408–09, 120 S.Ct. at 1521). Although clearly established federal law for purposes of § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision," *Williams,* 529 U.S. at 411, 120 S.Ct. at 1523, Ninth Circuit cases are instructive in determining what law is clearly established. *See Van Tran,* 212 F.3d at 1154.

In *Hernandez,* 500 U.S. at 359, 111 S.Ct. at 1866, a plurality of the Supreme Court held that "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." The magistrate judge refers to *Stubbs v. Gomez,* 189 F.3d 1099, 1104 (9th Cir.1999), which cites *Hernandez,* as evidence that the Ninth Circuit considers *Hernandez* to be clearly established law.[3] In the Ninth Circuit, plurality opinions of the Supreme Court are not binding. *Jacobsen v. U.S. Postal Service,* 993 F.2d 649, 655 (9th Cir. 1992). The *Stubbs* court was free to accept or reject the Supreme Court's reasoning in *Hernandez.* The fact that the Ninth Circuit in *Stubbs* followed *Hernandez* establishes only that the Ninth Circuit accepts the principle that the prima facie showing is moot when the prosecutor explains his or her decision to peremptorily challenge a prospective juror and the trial court has ruled on the question of intentional discrimination. It does not convert a non-binding Supreme Court plurality opinion into clearly established law.

The magistrate judge's reliance on *Purkett* is also misplaced. In *Purkett,* the trial judge found that the defendant had failed to make a prima facie showing in support of his *Batson* challenge. *See Purkett,* 514 U.S. at 771, 115 S.Ct. at 1772. On appeal, the Eighth Circuit cited *Hernandez* for the proposition that the prima facie case was moot before it as the reviewing court and analyzed whether the prosecutor's reasons for striking the prospective jurors were race neutral and not pretextual. *See Elem v. Purkett,* 25 F.3d 679, 682 (8th Cir.1994), *rev'd,* 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). The Supreme Court did not address whether the defendant had made a prima facie case, but instead explained the prosecutor's burden under step two of the *Batson* analysis. *See Purkett,* 514 U.S. at 768–69, 115 S.Ct. at 1771. The court held that the prosecutor is not required to put forth a plausible or persuasive reason for peremptorily excusing a prospective juror, but only a race neutral one. *See id.* In *Purkett,* the prosecutor satisfied this burden by challenging two prospective jurors because they had long hair, mustaches, and beards. *See id.* at 769, 115 S.Ct. at 1771. Significantly, the Court did not discuss whether the prima facie case was moot when the prosecutor offers reasons to explain the questioned peremptory challenge. In *Williams,* the Court made clear that federal law for purposes of § 2254(d)(1) refers only to the holdings of the Supreme Court. 529 U.S. at 411, 120 S.Ct. at 1523. Accordingly, *Purkett* is not a relevant source of clearly established federal law in this case.

---

**3.** The court held in *Stubbs* that it did not have to consider whether the defendant established a prima facie case because the record includ- ed the prosecutor's reasons for exercising the peremptory challenge. 189 F.3d at 1104–05.

Finally, the magistrate judge points to *Aikens* as a source of clearly established federal law. The plurality in *Hernandez* cited *Aikens* in support of its holding that the prima facie case is moot on appeal when the prosecutor has articulated reasons for challenging a prospective juror and the trial court has ruled on the issue whether such explanations show intentional discrimination. *See Hernandez*, 500 U.S. at 358, 111 S.Ct. at 1866. In *Aikens*, the plaintiff alleged that the United States Postal Service ("Postal Service") denied him promotions because of his race in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq. Aikens*, 460 U.S. at 712, 103 S.Ct. at 1480. After a trial on the merits, the district court entered judgment in favor of the Postal Service. *Id.* at 713, 103 S.Ct. at 1480. In their appellate briefs before the Supreme Court, the parties contested whether the plaintiff had established a prima facie case of discrimination. *Id.* at 713, 103 S.Ct. at 1481.

The Court responded, "[b]ecause this case was fully tried on the merits, it is surprising to find the parties and the Court of Appeals still addressing the question whether Aikens made out a prima facie case. We think that by framing the issue in these terms, they have unnecessarily evaded the ultimate question of discrimination vel non." *Id.* at 713–14, 103 S.Ct. at 1481. The Court explained that the burden shifting analysis was

"never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether

the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether "the defendant intentionally discriminated against the plaintiff."

*Aikens*, 460 U.S. at 715, 103 S.Ct. at 1482 (quoting *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (internal citation omitted)).

The burden shifting mechanisms employed in Title VII cases such as *Aikens* and in analyzing *Batson* challenges are parallel. In both instances, absent direct evidence of discrimination, the party alleging discrimination must first demonstrate a prima facie case. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Batson*, 476 U.S. at 93–96, 106 S.Ct. at 1721–23. The prima facie case raises an inference of discrimination. *See Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723. When the party alleging discrimination meets this burden, the burden of production shifts to the other party to produce a race neutral explanation for its decision. *See McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. at 1824; *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723. The factfinder then determines whether the alleged victim of discrimination has carried his or her burden of proving that discrimination occurred. *See Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095; *Batson*, 476 U.S. at 98, 106 S.Ct. at 1723.

Notably, the Court in *Batson* refers to court decisions involving Title VII, including *Aikens*, to explain how the burden shifting process operates. *See Batson*, 476 U.S. 79, 94 n. 18, 106 S.Ct. 1712, 1721. n.

18.[4] The burden shifting mechanism is simply a means to analyze the ultimate question of whether intentional discrimination occurred. *See Aikens*, 460 U.S. at 715, 103 S.Ct. at 1482. *See also Furnco*, 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 ("We think the Court of Appeals went awry, however, in apparently equating a prima facie showing under McDonnell Douglas with an ultimate finding of fact as to discriminatory refusal to hire under Title VII; the two are quite different and that difference has a direct bearing on the proper resolution of the case."). Given the Supreme Court's own direction to look to Title VII cases to explain the purpose and application of the *Batson* burden shifting mechanism, the court concludes that the Court of Appeal failed to extend clearly established analytic principles of law under Title VII to the situation in this case in a manner that is objectively unreasonable. *See Van Tran*, 212 F.3d at 1150. In this case, because the prosecutor "has done everything that would be required of him if [Petitioner] had properly made out a prima facie case, whether [Petitioner] really did so is no longer relevant." *Aikens*, 460 U.S. at 715, 103 S.Ct. at 1482.[5]

The magistrate judge vividly illustrates the absurdity that could result if the prima facie case remained the focus even when the prosecutor states reasons for peremptorily challenging a prospective juror:

One can hypothesize a scenario in which the following would occur: defendant's attorney makes a *Batson* objection in the absence of a prima facie showing; the trial court makes a finding of no prima facie showing, but nevertheless invites the prosecutor to state the true reasons for exercising the peremptory challenge; the prosecutor responds, in candor, that the true reason for the challenges was the color of the challenged juror's skin, or the juror's residence in Compton, California,[6] or some other reason that effectively confesses purposeful racial discrimination. The present case differs from this hypothetical scenario only in the sense that the prosecutor in the present case revealed his purposeful racial discrimination by stating demonstrably false, pretextual explanations, rather than by giving candid responses leading to the same conclusion. Acceptance of Respondent's argument would compel the denial of relief to the defendant in the hypothetical scenario, as well as to Petitioner in the present case. Acceptance of Respondent's argument would elevate the importance of a threshold inquiry designed merely to trigger analysis of discriminatory pur-

---

**4.** Footnote 18 in *Batson* is as follows: "Our decisions concerning 'disparate treatment' under Title VII of the Civil Rights Act of 1964 have explained the operation of prima facie burden of proof rules. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)."

**5.** The Ninth Circuit's recent decision in *Cooperwood v. Cambra*, 245 F.3d 1042, 2001 WL 322149. 245 F.3d 1042, 2001 Daily Journal D.A.R. 3371 (9th Cir.2001) does not affect the

court's analysis. Cooperwood appealed the denial of his petition for a writ of habeas corpus. He claimed that there had been a *Batson* violation, but the Ninth Circuit held that Cooperwood had not demonstrated a prima facie case. "Accordingly, because there was no prima facie Batson violation, we need not reach the quality of the prosecution's response, as none was required." Cooperwood is factually distinguishable from the instant case as there is no indication in the factual background that prosecutor offered reasons for exercising the peremptory challenge.

**6.** *See United States v. Bishop*, 959 F.2d 820, 825–26 (9th Cir.1992).

pose above the analysis of discriminatory purpose itself. According to respondent, all reviewing courts simply must ignore evident racial discrimination. *See* Magistrate Judge's Supplemental Report and Recommendation at pp. 6–7.

Under the circumstances of this case, the prima facie showing issue became moot when the prosecutor stated his reasons for exercising the subject challenge and the court determined that the reasons did not reveal a discriminatory intent. Therefore, the Court of Appeal's consideration of the prima facie showing resulted in a decision that involved an unreasonable application of clearly established federal law.

**B. Were the Trial Court's Findings that the Prosecutor's Reasons for Peremptorily Challenging Malbrough were Rational and not Racially Motivated an Unreasonable Determination of the Facts in Light of the Evidence?**

Because the prima facie case issue is moot, this court, as a reviewing court, must consider whether the trial court's and appellate court's findings that the prosecutor offered rational and non-racially motivated reasons for peremptorily challenging Malbrough were based on an unreasonable determination of the facts in light of the evidence presented to the trial court. *See Batson,* 476 U.S. at 97–98, 106 S.Ct. at 1723; 28 U.S.C. § 2254(d)(2). If the court agrees that the prosecutor's articulated reasons were race neutral, it must then review the Court of Appeal's affirmance of the trial court's factual finding that there was no intentional discrimination.

▮▮ The court reviews de novo the trial court's determination that the prosecutor's proffered reasons for peremptorily excusing Malbrough were rational and not racially motivated. *See United States v. McCoy,* 23 F.3d 216, 217 (9th Cir.1994).

The prosecutor does not have to offer reasons that make sense but only reasons that do not violate equal protection. *See Purkett,* 514 U.S. at 769, 115 S.Ct. at 1771. The prosecutor's reasons can be "silly" or "implausible." *Id.* at 768, 115 S.Ct. at 1771. Here, the prosecutor's explanation for striking Malbrough—that she had a job in education and was not forthcoming—are race neutral.

▮ Petitioner carries the burden of proving that the prosecutor engaged in purposeful discrimination in striking Malbrough. *See id.* A trial court's finding regarding whether a prosecutor's use of a peremptory challenge was discriminatory is entitled to a presumption of correctness and will not be disturbed unless the district court finds that the trial court committed clear error. *See McClain v. Prunty,* 217 F.3d 1209, 1220 (9th Cir.2000). The court is "not bound to accept at face value [the prosecutor's] list of neutral reasons that are either unsupported in the record or refuted by it." *Johnson v. Vasquez,* 3 F.3d 1327, 1331 (9th Cir.1993). "Where the facts in the record are objectively contrary to the prosecutor's statements, serious questions about the legitimacy of a prosecutor's reasons for exercising peremptory challenges are raised." *McClain,* 217 F.3d at 1221. "The fact that one or more of a prosecutor's justifications do not hold up under judicial scrutiny militates against the sufficiency of a valid reason." *Id.* To evaluate the credibility and validity of the prosecutor's reasons for exercising a peremptory challenge, the Ninth Circuit endorses comparative analysis of the personal characteristics and other factors of the excused prospective juror and the other prospective jurors who were not peremptorily challenged by the prosecutor. *See Turner v. Marshall,* 121 F.3d 1248, 1251–52 (9th Cir.1997). "Perempto-

ry challenges cannot be lawfully exercised against potential jurors of one race unless potential jurors of another race with comparable characteristics are also challenged." *McClain,* 217 F.3d at 1221.

The California Supreme Court rejects the use of comparative analysis in resolving the issue of purposeful discrimination in the exercise of a peremptory challenge. *See People v. Johnson,* 47 Cal.3d 1194, 1220–22, 255 Cal.Rptr. 569, 578–80, 767 P.2d 1047 (1989). Respondent contends that this court cannot use comparative analysis unless it determines that the trial court's failure to use comparative analysis is "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Since the Supreme Court has remained silent on this issue, Respondent maintains that this court is bound to follow the California Supreme Court's ban on the use of comparative analysis. However, this court is not reviewing the trial court's determination that Petitioner did not prove discrimination under 28 U.S.C. § 2254(d)(1), but under 28 U.S.C. § 2254(d)(2), which permits a federal court to grant a writ of habeas corpus when a state court judgment "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Nothing in § 2254 prevents this court from using comparative analysis in evaluating the trial court's factual finding of no discriminatory intent by the prosecutor in peremptorily challenging Malbrough. Moreover, Ninth Circuit precedent requires it. *See Turner,* 121 F.3d at 1251.

The court adopts the following analysis, findings and conclusions of the magistrate judge in his evaluation of the prosecutor's explanation for striking Malbrough as follows:

In the present case, the prosecutor purported to state two race-neutral reasons for his peremptory challenge of Malbrough: (1) 'the fact that I excluded every single person so far that has been involved in education as a job .... I have bad luck with teachers'; and (2) Malbrough '[h]ad notgiven any other information other than what's on the blue form' ... Malbrough was not 'very forthcoming with answers.' Neither stated reason withstands scrutiny.

Underlying the first stated reason was the claimed assumption Malbrough was a teacher, an assumption unsupported by the record. Malbrough said only she 'worked for UCR [University of California at Riverside].' She did not state the nature of her work. In *McClain,* the Ninth Circuit deemed illegitimate a race-neutral reason that rested upon the prosecutor's assumption that a prospective juror was a 'stewardess' when the prospective juror had stated only that she worked 'in airline maintenance.' 217 F.3d at 1221.

The prosecutor's first stated reason would remain unsupported by the record even if the reason were broadened from 'teacher' (the prosecutor's purported intendment) to 'has been involved in education as a job' (the prosecutor's initial characterization). Only in the loosest sense could one conclude that someone who works at a university necessarily 'has been involved in education as a job.' For example, persons who work at universities in food services, housing or janitorial maintenance would not be considered in any genuine sense to have been 'involved in education as a job.'

Most significantly, the prosecutor intertwined his first stated reason with a demonstrable falsehood. The prosecutor falsely represented he had 'excluded every single person so far that has been involved in education as a job.' In fact,

the prosecutor had declined to exclude two non-African-American prospective jurors who had been 'involved in education as a job.' The prosecutor had declined to exercise peremptory challenges against Ruth Ann Palmer, a teacher, and Juror No. 7, a retired schoolteacher.[7] Petitioner's counsel later removed Palmer through a peremptory challenge. Juror No. 7 served on Petitioner's petit jury, even though the prosecutor retained unexhausted, available peremptory challenges.[8]

The prosecutor's only other stated reason for challenging Malbrough similarly is unsupported by the record and refuted by comparative analysis. Initially, it is important to note that the court trial [sic] encouraged the prospective jurors to give the information from the 'blue card'[9] rapidly, and seemingly, without elaboration. The trial court directed the jurors to 'give us the information quickly from the blue card that you have before you, and we will go right down the line, starting with Juror No. 1.

So we're going to do this real rapidly.' Given this directive, Malbrough's efficiency in providing responsive answers to the questions on the blue card did not provide any plausible basis for exercising a peremptory challenge. *See Purkett v. Elem,* 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) ("implausible ... justifications may (and probably will) be found to be pretexts for purposeful discrimination"). The mere fact that truthful responses to other voir dire questions directed to the entire venire would produce additional information from some members of the venire, but not from others, likewise does not provide any plausible basis for exercising a peremptory challenge.

Furthermore, the prosecutor failed to challenge non-African-American jurors whose statements during voir dire were equally as concise and 'not forthcoming' as Malbrough. *Compare* Reporter's Transcript 82–82 (Malbrough) with R.T. 57 (Juror No. 10), and R.T. 58 (Juror No. 12).[10] The prosecutor declined the

---

7. The trial court evidently failed to recognize the falsity of the prosecutor's representation that he had 'excluded every single person so far that has been involved in education as a job.'

8. By his own admission, the prosecutor considered retired teachers, such as Juror No. 7, to be within the purview of his supposed policy of excluding 'every single person so far that has been involved in education as a job.' The prosecutor identified David McAnern, a retired teacher, as belonging in this category.

9. The blue card evidently requested oral answers in narrative form to the following questions:

1. State your full name
2. What is the general area of your residence?
3. What is your occupation? (You do not need to indicate where you work.)
4. What is your marital status?

5. What is your husband's/wife's occupation? (You do not need to indicate where he or she works.)
6. How many children do you have?
7. What are the occupations of any adult children?
8. Can you arrive at a fair and impartial verdict as to both sides in this matter?
9. Have you or any member of you family even been a witness in a criminal case?

10. MALBROUGH: My name is Patsean Malbrough. I live in Riverside. I work at UCR. I'm not married. I don't have any husband. I have one daughter who stays with me. No kids, just a grandchild that stays with me. Yes and no.
The Court: What does your daughter do?
MALBROUGH: She doesn't work right now.
THE COURT: Okay (R.T. 82–83).
JUROR NO. 10: (Juror No. 10) from Moreno Valley. I am a merchandiser. I am married. My wife's a secretary and I have one

opportunity to challenge peremptorily Jurors 10 and 12, despite the absence of any material distinction between the 'forthcomingness' of their responses and that of Malbrough's responses.

The instant case presents a close parallel with the *McClain* Court's analysis of a challenge to the African–American prospective juror identified in the *McClain* opinion as 'SR.' The prosecutor in *McClain* gave three reasons for challenging SR: (1) SR's son was being incarcerated and she had said she did not feel she was being treated fairly by the system and she did not trust the system; (2) she said she worked as an airline stewardess, though she was heavy set; and (3) she had no group decisionmaking experience. *McClain,* 217 F.3d at 1216. The Ninth Circuit found the first two reasons to be 'objectively contrary to the facts' and the third reason pretextual as revealed by a comparative analysis of SR and another juror. *Id.* at 1221. The Ninth Circuit observed that, in discussing her son's arrest, SR stated she initially believed her son had been treated unfairly, but had changed her mind. As previously discussed, the Court held the assumption SR was a stewardess to be an 'illegitimate reason' unsupported by SR's statement she 'worked in airline maintenance.' *McClain,* 217 F.3d at 1221. Thirdly, the *McClain* Court pointed to MG, a non-African-American juror, who was empaneled even though he had no

significant group decisionmaking experience (though he apparently said he had worked on a committee in his office). The Ninth Circuit concluded:

> [The] comparison between SR and MG fatally undermines the credibility of the prosecutor's stated justification .... If the statement was genuine and not merely pretextual, the prosecutor would have excluded MG on the same basis, which of course, she did not. We conclude that the trial court's decision that McClain did not meet his burden of proving intentional discrimination with respect to juror SR, was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2). *Id.* (citations and quotations omitted).

For the reasons discussed above, Petitioner in the present case, like the petitioner in *McClain,* has proven by clear and convincing evidence that the state courts' findings the prosecutor did not purposefully discriminate in exercising the subject peremptory challenge were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.' 28 U.S.C. § 2254(d)(2); *see Turner,* 121 F.3d at 1253–54 [11] (prosecutor purportedly struck African–American juror for alleged reluctance to view gory photographs, but retained white juror who also manifested squeamishness);

---

child. She is in high school. And 8 and 9, yes and no.

THE COURT: Thank you (R.T. 57).

JUROR NO. 12: (Juror No. 12). I live in Moreno Valley. I am an office assistant.

THE COURT: For Riverside?

JUROR NO. 12: Office Assistant II.

THE COURT: Okay.

JUROR NO. 12: Single.

THE COURT: You said it so fast I didn't get it.

JUROR NO. 12: Sorry. No children. And 8, yes; 9, no.

THE COURT: Thank you (R.T. 58).
[Footnote altered from the original].

**11.** The Court recognizes that the standard of review in pre-AEDPA habeas cases as *Turner* differs from the standard applicable herein.

*Ford v. Norris,* 67 F.3d 162, 169–70 (8th Cir.1995) (absence of support in the record for prosecutor's stated reasons rebuts presumption of correctness of state trial court's findings); *Devose v. Norris,* 53 F.3d 201, 205 (8th Cir.1995) (where the state fails to establish that any reason given for the exercise of strikes against African–American jurors has been applied equally to similarly situated white jurors, the court is 'left with the inescapable conclusion' that the prosecutor's explanation for excluding African–American prospective jurors was pretextual); *Davidson v. Harris,* 30 F.3d 963, 965–66 (9th Cir.1994) (prosecutor's stated reason for excluding African–American juror that she had young children held pretextual where white jurors with young children were not excluded); *Johnson v. Vasquez,* 3 F.3d 1327, 1330–31 (9th Cir.1993) (prosecutor's explanations based in part on erroneous inference of occupation found to be pretextual); *United States v. Chinchilla,* 874 F.2d 695, 698 (9th Cir.1989) [12] (the fact that two of the prosecutor's four stated reasons did not withstand judicial scrutiny caused the court to discern a *Batson* violation).[footnote omitted].

### III.

### DISPOSITION

IT IS ORDERED THAT

1) Petitioner's petition for writ of habeas corpus is GRANTED, and

2) Judgment be entered as follows: Respondent shall release Petitioner from custody and discharge him from all other adverse consequences of his conviction in state court case number PEF00564, unless Petitioner is brought to retrial within ninety (90) days of the date the Judgment herein becomes final, plus any additional delay authorized by State law.

12. The Court recognizes that the standard of review in federal direct appeal cases such as *United States v. Chinchilla* differs from the standard applicable herein.