**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 15 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

JUAN MARTÍN SANCHEZ-MATA,

     Defendant - Appellant.

No. 01-2075
(D.C. No. CR-00-873-JP)
(District of New Mexico)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **ALARCON,**[**] and **ANDERSON**, Circuit Judges.

In this direct criminal appeal, the only issue before the court is whether the district court erred in denying the defendant's *Batson* claim. *See Batson v. Kentucky*, 476 U.S. 79 (1986). Exercising jurisdiction under 28 U.S.C. § 1291, this court **affirms**.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]The Honorable Arthur L. Alarcon, Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

The facts in this case are undisputed. On December 5, 1999, border patrol authorities questioned defendant Juan Martín Sanchez-Mata at the checkpoint on Highway 54 near Orogrande, New Mexico. Upon further investigation, agents arrested Sanchez-Mata after discovering a large quantity of marijuana in the vehicle he was driving.

A federal grand jury sitting in the United States District Court for the District of New Mexico returned a one-count indictment against Sanchez-Mata for possession with the intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D), and 18 U.S.C. § 2. Sanchez-Mata's first trial was declared a mistrial after the jury was unable to reach a verdict. On retrial, a jury found him guilty. Sanchez-Mata received a sentence of forty-one months' imprisonment and two years of supervised release.

During the *voir dire* of the venire pool at Sanchez-Mata's second trial, the government exercised its peremptory challenges to strike four venirepersons. Of those four, venirepersons Guzman, Ortega, and Garcia were Hispanic, and Mance was African-American. Sanchez-Mata made a timely *Batson* objection after the jury had been empaneled but before they were sworn in. The government then explained the reasons for peremptorily striking each of the four venirepersons. The government stated that Guzman, Ortega, and Mance had previously served on juries which had returned not guilty verdicts. The government further offered that

Garcia and Guzman had previously served as jurors in a case in which the judge directed an acquittal and spoke privately to jurors without counsel present. Moreover, the government explained that Ortega had expressed problems with immigration law and its enforcement during *voir dire* in another trial.

The district court concluded that Sanchez-Mata had not made a *prima facie* showing of purposeful racial discrimination. It further concluded that, even if Sanchez-Mata had met his *prima facie* burden, the government's explanations for striking the four venirepersons were racially neutral. The district court then concluded that the four venirepersons had been stricken for racially neutral reasons and added that "other members of the Hispanic race and culture have been left on the jury, and the government did not exercise its right to excuse them peremptorily. So with that, the Batson challenge is refused."

Sanchez-Mata filed a timely appeal, raising only the district court's denial of his *Batson* claim.[1]

---

[1]Originally, Sanchez-Mata also alleged that the district court failed to comply with the Court Reporter's Act by failing to ensure that a portion of the *Batson* hearing was recorded. *See* 28 U.S.C. § 753(b). The parties agree that a portion of recorded hearing was not originally transcribed. As the appellant, however, Sanchez-Mata had the duty to provide a transcript of all pertinent portions of the hearing. *See* Fed. R. App. P. 10; 10th Cir. R. 10.1(A)(1). The record does not indicate that Sanchez-Mata attempted to obtain the missing portion of the transcript or otherwise prepare a statement from the appellant's recollection. *See* Fed. R. App. P. 10(c). In its supplemental appendix, the government provides the missing portion of the transcript, which has been certified by the transcribing court reporter. Because Sanchez-Mata does not

In analyzing the district court's disposition of a *Batson* claim, this court reviews *de novo* the proffered racially neutral explanations for peremptory challenges.[2] *See United States v. Sneed*, 34 F.3d 1570, 1580 (10th Cir. 1994). We review for clear error the district court's ultimate factual finding that there was no intentional discrimination. *See id.*

In *Batson*, the Supreme Court held that venirepersons cannot be stricken from a jury solely because of their race or on the assumption that jurors of a particular race will be unable to impartially consider the case against the defendant. *See United States v. Bedonie*, 913 F.2d 782, 794 (10th Cir. 1990) (citing *Batson*, 476 U.S. at 89). The *Batson* court enunciated a three-step process to determine whether the defendant's equal protection rights were violated. *See Batson*, 476 U.S. at 96-98.

The first step is for the defendant to make a *prima facie* showing that the peremptory strikes were discriminatory. *See Purkett v. Elem*, 514 U.S. 765, 767 (1995) (per curiam). To establish a *prima facie* case of intentional discrimination, the defendant must show that the prosecutor has exercised peremptory challenges to remove minority venire members as well as facts and relevant circumstances

---

challenge the accuracy or completeness of the transcription, this court deems the issue conceded.

[2]While the *Batson* claim in this case is directed at multiple peremptory challenges, the analysis would be the same for a single challenge.

which raise an inference that the government used its peremptory challenges to exclude venirepersons on account of their race. *Cf. Bedonie*, 913 F.2d at 794.[3] This court has noted that such factors could include the disproportionate impact of peremptory strikes on minority venirepersons, a pattern of strikes against jurors of a particular race, and the prosecutor's questioning and statements during *voir dire*. *United States v. Esparsen*, 930 F.2d 1461, 1465 (10th Cir. 1991). At this stage, the party making the *Batson* claim "is entitled to rely on the fact . . . that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate." *Bedonie*, 930 F.2d at 794 n.13 (quoting *Batson*, 476 U.S. at 96) (internal quotation marks omitted).

Once the defendant makes a *prima facie* showing, the burden shifts to the government to come forward with a racially neutral explanation for its peremptory challenges. *See id.* at 794. This step "does not demand an explanation that is persuasive, or even plausible." *Elem*, 514 U.S. at 767-68. Rather, the reviewing court looks to the facial validity of the prosecutor's explanation. *Id.* at 768. "Unless a discriminatory intent is inherent in the prosecutor's explanation, the

---

[3]*Batson* had previously required that the defendant be a member of a cognizable racial group. *See Batson v. Kentucky*, 476 U.S. 79, 96 (1986). The Supreme Court, however, has since held that "a criminal defendant may object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same races." *Powers v. Ohio*, 499 U.S. 399, 402 (1991).

reason offered will be deemed race neutral." *Id.* (quoting *Hernandez v. New York*, 500 U.S. 352, 360 (1991) (plurality opinion)). The Supreme Court has emphasized that a racially neutral reason is legitimate so long as it does not deny equal protection. *See id.* at 769.

The final step is for the trial court to determine whether the opponent of the strike has proved purposeful racial discrimination. *See id.* at 768. It is only at this step that the persuasiveness of the government's proffered explanation becomes relevant, and the district court may properly reject implausible or fantastic justifications as pretexts for purposeful discrimination. *See id.* While a *Batson* claim involves a three-step process, the burden of persuasion always remains with the party opposing a peremptory challenge. *See id.*

This court has stated that review of a *prima facie* showing becomes moot whenever the prosecutor offers a racially neutral explanation and the district court rules on the ultimate factual issue of whether the prosecutor intentionally discriminated. *See United States v. Johnson*, 941 F.2d 1102, 1108 (10th Cir. 1991) (citing *Hernandez*, 500 U.S. at 359). In this case, review of the first inquiry is unnecessary because the government gave its explanations of the peremptory challenges and the district court made a finding that the government's strikes were not racially motivated.

At the second step of the *Batson* rubric, Sanchez-Mata apparently concedes that the government's proffered explanations for striking the four minority venirepersons were racially neutral. Thus, Sanchez-Mata's sole argument is that the district court erred at the third step of the *Batson* claim, *i.e.*, a determination whether the defendant has demonstrated that the government's justifications were pretextual. He claims that the district court erred at this final step by ruling in a summary fashion and failing to address each of the reasons articulated by the prosecutor.

The Supreme Court has emphasized that at the final step, the trial court's determination of intentional discrimination turns on its evaluation of the prosecutor's credibility. *See Hernandez*, 500 U.S. at 365. In most peremptory challenge inquiries,

> the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province.

*Id.* (quotation omitted); *see also United States v. Kunzman*, 54 F.3d 1522, 1529 (10th Cir. 1995). Here, the district court chose to credit the prosecutor's racially neutral explanations for striking the four venirepersons.

-7-

Given the broad deference to the district court's determinations of credibility, this court has never held, and does not hold today, that a district court must explicitly state its credibility determinations on the record for each proffered explanation. *But see Galarza v. Keane*, 252 F.3d 630, 636, 639 (2d Cir. 2001).[4] Moreover, there is no suggestion in the record that the district court conducted the *Batson* analysis with undue haste or any procedural impropriety, as the district court apparently did in *United States v. Stavroulaksis*, 952 F.2d 686, 696 (2d Cir. 1992) (noting that the district court may have denied defense counsel the opportunity to articulate a *prima facie* case under *Batson* but affirming the district court's denial of defendant's *Batson* challenge).

Finally, Sanchez-Mata argues that a trial court is not bound to accept the government's facially neutral reasons which are unsupported by the record. In support of this proposition, he cites *Johnson v. Vasquez*, 3 F.3d 1327, 1331 (9th

---

[4]For similar reasons, this court rejects Sanchez-Mata's argument that the district court did not independently verify the veracity of the government's rationales for striking the four venirepersons. Although it is true that none of the government's explanations are verified by the record, it appears that the government's knowledge about the stricken venirepersons is based on the practice in New Mexico requiring potential jurors to serve long jury duty terms. The record does reveal that many of the venirepersons in Sanchez-Mata's trial, including those the government peremptorily challenged, had previously served in cases which were tried by the prosecutors in this case.

As the party who carries the burden of persuasion, Sanchez-Mata does not argue that the government's explanations are disingenuous or untrue. In any case, whether the district court believes the government's proffered reasons is based on its credibility determinations.

Cir. 1993). In *Johnson*, however, the record included strong indications that the government's racially neutral explanations were pretextual. *Id.* at 1329-30. No such indications, however, are present in this case.

After a thorough review of the record, this court concludes that the district court's finding of no intentional discrimination was not clearly erroneous. Our conclusion is strengthened by the district court's uncontested finding that several Hispanic venirepersons were empaneled, even though the government had not exhausted its peremptory challenges. *See United States v. Hartsfield*, 976 F.2d 1349, 1356 (10th Cir. 1992).

Accordingly, the district court's denial of Sanchez-Mata's *Batson* claim is **AFFIRMED**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge