Andre JOHNSON, Petitioner–Appellant,

v.

Daniel B. VASQUEZ, Warden,
Respondent–Appellee.

No. 91–56395.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 7, 1992.

Decided Sept. 2, 1993.

William S. Harris, Stewart & Harris, Pasadena, CA, for petitioner-appellant.

Sanjay T. Kumar, Deputy Atty. Gen., Los Angeles, CA, for respondent-appellee.

Before: CANBY, BOOCHEVER, and THOMPSON, Circuit Judges.

CANBY, Circuit Judge:

Andre Johnson, a California prisoner, appeals from the district court's judgment that dismissed his petition for a writ of habeas corpus. Johnson alleges that the state prosecutor excused an African–American woman from the venire on the basis of her race, thereby violating the Equal Protection Clause as interpreted by the Supreme Court in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). A state appellate court rejected on direct appeal an analogous claim made under the California Constitution. The district court rejected Johnson's *Batson* claim after an evidentiary hearing. We reverse the judgment, and remand the case to the district court with instructions to issue the writ.

I

A jury convicted Johnson of twice robbing a convenience store located in Torrance, California. Johnson, who is African–American, received a sentence of 13 years and eight months in state prison.

Jury selection in Johnson's case took place on December 15, 1986, in Los Angeles County Superior Court. The venire consisted of twenty-six persons, from whom twelve jurors and two alternates were to be selected. Only one member of the venire, a Mrs. Nichols–Garland, was African–American.

The prosecutor and Johnson's trial counsel agreed to excuse two members of the venire for cause. Johnson's counsel used three peremptory challenges, but the prosecutor passed three additional times upon a panel that included Mrs. Nichols–Garland before challenging one potential juror and excusing another for cause. Johnson's counsel then challenged a Mr. Li, who is Asian–American, after Mr. Li had indicated that he might have difficulty understanding spoken English. Johnson's counsel next questioned another potential juror whom the prosecutor passed for cause.

The prosecutor peremptorily challenged Mrs. Nichols–Garland immediately thereafter. Johnson's counsel protested. The trial court asked the prosecutor for an explanation. The prosecutor said:

> First of all, I passed four times and allowed counsel to have whatever juror he wanted. Then as I saw him excluding people from particular races, notably Mr. Li, I decided that, one, I didn't want a young woman named Garland on the jury because of her age; and two, she worked for defense attorneys and that was another reason why I excused her.

> And I feel that the defendant at this point was starting to load up the jury. And I felt that I would not get a fair trial based on the panel as it presently is constituted
> . . .

> Mrs. Garland, I felt also was uneducated and evasive in her responses to my questions. But particularly since she worked for a defense attorney, and had done so for the past six months, I felt that for those reasons alone and not for any reasons of race, I would excuse her.

"I bent over backward to keep [Mrs. Nichols–Garland] on the jury because she was the only black woman," the prosecutor maintained.

Johnson moved for a mistrial. The trial court summarily denied the motion from the bench. Johnson renewed his objection to the manner of jury selection in a motion for a new trial. The trial court denied that motion in a minute order.

On direct appeal, Johnson asserted that the prosecutor had excluded Mrs. Nichols–Garland because she is African–American. The California Constitution bars the use of peremptory challenges "to remove prospective jurors on the sole ground of group bias." *People v. Wheeler*, 22 Cal.3d 258, 148 Cal. Rptr. 890, 903, 583 P.2d 748, 761–62 (1978). The California Court of Appeal determined that no *Wheeler* error had occurred at Johnson's trial. *People v. Johnson*, No. B026468 (Cal.Ct.App. June 15, 1988). It found that the prosecutor had offered explanations which indicated the existence of specific bias; namely, that Mrs. Nichols–Garland had worked for a defense attorney and that she had been evasive in answering questions. *Id.*, slip op. at 9. The court determined that those explanations were no pretext, but were the actual causes that had induced the prosecutor to excuse Mrs. Nichols–Garland. *See id.*

After exhausting state court remedies, Johnson sought habeas relief in federal court under 28 U.S.C. § 2254. Johnson maintained that the state prosecutor had challenged Mrs. Nichols–Garland because of her race, in violation of *Batson*. A federal magistrate conducted an evidentiary hearing and recommended that the district court dismiss the petition on the merits. The magistrate concluded that the prosecutor had offered race-neutral explanations for his conduct that were the actual motivations for the challenge. The district court adopted the magistrate's report without modification and dismissed the petition. Johnson appealed, and we have jurisdiction under 28 U.S.C. § 2253.

## II

■ We review de novo the district court's decision to deny Johnson's petition. *Adams v. Peterson*, 968 F.2d 835, 843 (9th Cir.1992) (en banc), *cert. denied*, —— U.S.

——, 113 S.Ct. 1818, 123 L.Ed.2d 448 (1993).[1] We will overturn the district court's underlying fact findings only to correct clear error. *Thomas v. Brewer*, 923 F.2d 1361, 1364 (9th Cir.1991).

■ Johnson seeks habeas relief under the process outlined in *Batson*. That process includes three inquiries. The first is whether the defendant has made a prima facie showing that the prosecutor challenged on the basis of race. The second is whether the prosecutor has articulated a facially race-neutral explanation for his or her action. The third is whether the defendant has carried his or her ultimate burden of proving purposeful discrimination. *Hernandez v. New York*, —— U.S. ——, ——, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991) (plurality op.) The first inquiry is inapplicable here.[2] Because the prosecutor has given reasons for excusing Mrs. Nichols–Garland that may be considered facially race-neutral, we assume without deciding that he carried his burden of production under *Batson*'s second prong.[3] We therefore ask whether Johnson carried his burden of proving intentional discrimination. *Batson*, 476 U.S. at 98, 106 S.Ct. at 1723.

■ The district court's ultimate finding that no intentional discrimination occurred at Johnson's trial is a finding of fact which we review for clear error. *Hernandez*, —— U.S. at —— – ——, 111 S.Ct. at 1868–69; *United States v. Bishop*, 959 F.2d 820, 826–27 (9th Cir.1992). We further begin with the presumption that the analogous finding of the state court of appeal is correct. *Sumner v. Mata*, 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (interpreting 28 U.S.C. § 2254(d)).

■ We observe at the outset that there is a strong indication in the prosecutor's explanation to the trial court that his challenge was, in fact, racially based. The prosecutor

---

1. No problem relating to retroactivity, procedural default, or successive writs arises in this case.

2. We need not address the question whether Johnson offered prima facie evidence of intentional discrimination, *see Batson*, 476 U.S. at 96–97, 106 S.Ct. at 1722–23, because the prosecutor offered an explanation for the challenge, and the trial court ruled on the ultimate question of dis-

crimination. *Hernandez*, —— U.S. at ——, 111 S.Ct. at 1866.

3. We express no opinion on the issue whether a mixed-motive defense in *Batson* jury challenge cases is a valid one.. *See, e.g., Howard v. Senkowski*, 986 F.2d 24, 30 (2d Cir.1993) (holding that *Batson* cases are subject to a dual-motivation analysis).

said, in the same breath in which he said he had excluded Mrs. Nichols–Garland on the basis of her age and occupation, that *he had been willing to accept* Mrs. Nichols–Garland, but that his position changed when he saw defense counsel "excluding people from particular races, notably Mr. Li. . . ." This contemporary statement strongly suggests that the prosecutor responded to defense counsel's alleged exclusions of other minority venire members by excluding a member of defendant's race. What, then, did the prosecutor present to counter this strong suggestion? [4]

The prosecutor offered the state trial court four justifications that could serve as neutral reasons for his challenge: (1) that Mrs. Nichols–Garland had worked for a defense attorney; (2) that she was uneducated; (3) that she had been evasive in answering questions; and (4) that her age was a problem.[5] After reviewing thoroughly the transcripts of the voir dire proceeding and the federal evidentiary hearing, we are convinced that Johnson carried his burden of proving intentional discrimination by establishing that the prosecutor's four race-neutral explanations were a pretext for excluding Mrs. Nichols–Garland from the jury because of her race. Accordingly, we find that the voir dire transcript fails to support the state appellate court's finding to the contrary. We further determine that the district court clearly erred in failing to grant Johnson habeas relief.

The record undermines the prosecutor's statements that Mrs. Nichols–Garland had worked for a defense attorney. Rather, she testified that in the past she had worked for a lawyer "[a]nd it was a marriage and divorce type thing." Nor had she, as the prosecutor asserted, worked for an attorney during the six months preceding jury selection. Instead, she testified that she had "worked for a lawyer six months ago." The prosecutor, at that time, noted accurately her testimony

on a jury panel scratch sheet, which the district court admitted into evidence.

There is even less support in the record for the notion that Mrs. Nichols–Garland was uneducated. The transcript of her voir dire indicates she spoke excellent English, gave intelligent responses, and chose her words well. Her position as assistant to the head of the Sales Service Department for Neutrogena, a major manufacturer and distributor of health products, strongly suggests that she was sufficiently educated to serve on any jury.

Furthermore, there was nothing remotely evasive in Mrs. Nichols–Garland's responses to questions. Indeed, they were unusually pithy and direct. For example, when asked whether defense counsel's prior references to race during voir dire had offended her, she responded simply "It didn't bother me," and "I felt nothing." The prosecutor understandably had difficulty explaining at the evidentiary hearing how that response had been evasive. "It wasn't evasive or false," he admitted, but maintained, "It was just a way to avoid the question . . . [I]t was a non-responsive answer . . . The answer didn't tell me anything." At the evidentiary hearing, the prosecutor asserted that Mrs. Nichols–Garland's demeanor had shown her evasiveness. However, he never made that observation to the trial court. The prosecutor's after-the-fact explanation on this score is wholly insufficient, in light of the record, to permit the trier of fact to accept evasiveness as having been a neutral ground of challenge.

Finally, neither the voir dire transcript, the evidentiary hearing transcript, nor the prosecutor's jury panel sheet (the only exhibit in the record) reveals Mrs. Nichols–Garland's age. Whatever it might have been, the prosecutor's terse reference to age in his explanation during voir dire fails to indicate whether he believed her to be too young or too old for the jury. Because there is no

---

**4.** We disagree with the dissent's view that, by posing this question, we shift the burden of proof to the prosecutor. We are simply unfolding the record; the prosecutor did offer four reasons for his challenge. The burden remains with Johnson to show that these reasons were pretextual and that the true reason for the challenge was racial.

**5.** During his explanation, the prosecutor referred to another juror, a Mrs. Gerald, whom he had excused because she worked for a grocery chain. The voir dire transcript reveals that Mrs. Nichols–Garland worked for Neutrogena, a manufacturer and distributor of health products.

factual basis to support the age explanation, it is insufficient to support the district court's finding that age served as a race-neutral ground for removing Mrs. Nichols–Garland from the panel.

■ In sum, the record before us belies each of the prosecutor's facially race-neutral explanations. In view of the multiple erroneous reasons advanced, we cannot accept the proposition that the prosecutor's alleged mistaken beliefs can support a challenge free of constitutional taint. When there is reason to believe that there is a racial motivation for the challenge, neither the trial courts nor we are bound to accept at face value a list of neutral reasons that are either unsupported in the record or refuted by it. Any other approach leaves *Batson* a dead letter.

We conclude that there is insufficient support in the record for a trier of fact to find that Mrs. Nichols–Garland, the only African–American member of the venire, was removed from the jury for other than racial reasons. The district court's contrary finding was clearly erroneous.

REVERSED and REMANDED with instructions.

DAVID R. THOMPSON, Circuit Judge, dissenting:

I respectfully dissent.

The majority reverses the district court by retrying a question of fact the district court resolved. The majority does this by examining the cold record. This record shows neither the witnesses' demeanor, pauses in responses to questions, manner of answering, nor the myriad of other factors which a trial judge is uniquely able to observe and rely upon in making findings of fact.

Here the trial judge did what he was supposed to do. He resolved a close question of fact. The state court did the same thing, and its finding of fact on the same issue is presumptively correct. *Sumner v. Mata*, 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722. Now on appeal, the majority tosses all this aside by relying on the *voir dire* transcript from the state trial court, the transcript of the evidentiary hearing before the district court, and an exhibit. The majority's analysis by which it reaches its result is flawed, and with all due respect its decision is wrong.

The majority accepts, as indeed it must, that the prosecutor's reasons for exercising a peremptory challenge to excuse Mrs. Nichols–Garland were facially race-neutral. The majority also acknowledges that the burden shifted to the defendant to prove intentional discrimination. So far so good.

The majority then points out that the prosecutor said he had initially been willing to accept Mrs. Nichols–Garland, but his position changed when he saw defense counsel "excusing people from particular races, notably Mr. Li." This is where the majority's analysis starts to unravel. It characterizes this statement as a "strong suggestion" that the prosecutor excluded Mrs. Nichols–Garland because of her race. Majority at p. 1330. It then puts a questionable spin on the burden of proof by asking: "What, then, did the prosecutor present to counter this strong suggestion?" *Id.*

Poof! Just like that the defendant's burden to prove intentional discrimination disappears. It is replaced by the featherweight of a "suggestion," or perhaps by no weight at all because, according to the majority, the burden has now shifted to the prosecutor to "counter this strong suggestion."

I disagree with this application of the burden of proof. However, even if the game is played by these rules, the defendant still loses. The prosecutor's reference to race was made in the context of a number of reasons he articulated for excusing Mrs. Nichols–Garland as a prospective juror. When the defense accused him of excusing her because of her race, the prosecutor stated:

First of all, I passed four times and allowed counsel to have whatever juror he wanted. Then as I saw him excluding people from particular races, notably Mr. Li, I decided that, one, I didn't want a young woman named Garland on the jury because of her age; and two, she worked for defense attorneys and that was another reason why I excused her.

And I feel that the defendant at this point was starting to load up the jury.

And I felt that I would not get a fair trial based on the panel as it presently is constituted.

I excluded Mrs. Garland because she was a young woman who worked for a grocery chain. And I feel her answers were evasive. But I was willing to accept the panel with her.

Mrs. Garland, I felt also was uneducated and evasive in her responses to my questions. But particularly since she worked for a defense attorney, and had done so for the past six months, I felt that for those reasons alone and not for any reasons of race, I would excuse her.

In fact, I bent over backward to keep her on the jury because she was the only black woman. But as counsel eliminated, exercised different peremptories

. . . .

The only way the prosecutor's facially race-neutral statements can be found to be pretextual is for this court to substitute its factfinding prowess for that of the district court and disbelieve the prosecutor when he said: "I felt that for those reasons alone [her age, limited education, employment at a grocery chain, evasiveness, and the belief that she was employed by defense attorneys] I would excuse her." Were these the real reasons the prosecutor excused Mrs. Nichols–Garland? He said they were.

To determine if he was telling the truth, the district court held an evidentiary hearing. The prosecutor appeared before the court and testified. He explained that the composition of a jury changes when, in the *voir dire* process, one juror is replaced by another. A trial lawyer might be willing to accept one jury mix, but not another.

The prosecutor testified that when Mr. Li was excused and replaced by another juror, he was no longer willing to accept the jury mix with Mrs. Nichols–Garland as a juror. He explained why he excused Mrs. Nichols–Garland, and reiterated that the reasons he excused her had nothing to do with her race.

The district court believed him. It made a factual finding that the prosecutor had not excused Mrs. Nichols–Garland because of her race. I would not disturb this finding, because in my view it is not clearly erroneous.[1]

There is another reason I would affirm. Even if we assume the prosecutor's reasons for excusing Mrs. Nichols–Garland were based in part on her race, the prosecutor gave four race-neutral reasons for excusing her. At worst, the prosecutor had a mixed motive for exercising his peremptory challenge. Although the majority avoids the issue (Majority p. 1329, n. 3), I would apply a mixed-motive defense to the prosecutor's statements as the Second Circuit did in *Howard v. Senkowski*, 986 F.2d 24, 27 (2d Cir. 1993).

In *Howard*, the prosecutor conceded that race had been a factor in his peremptory challenge. *Id.* at 25. He articulated other race-neutral reasons for his peremptory challenge. *Id.* The Second Circuit applied a mixed-motive analysis in considering the question whether the prosecutor's challenge would have been made even without the improper motivation. *Id.* at 26–30. The court drew upon the Supreme Court's explanation of how the dual-motivation analysis operates in the context of a discrimination case. *Id.* at 26–27, discussing *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265–66, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977). The Second Circuit concluded that because the prosecutor was guilty of acting in part from improper motives, the burden shifted to him to show that he would have exercised his peremptory challenge regardless of the improper motive. *Howard*, 986 F.2d at 30. The district court had not considered this kind of analysis, and to permit it to do so the Second Circuit remanded the case to the district court.

In the present case, the district court found that the prosecutor excused Mrs. Nichols–Garland for race-neutral reasons. This is

---

1. The district court further noted that the record showed that during *voir dire* the prosecutor repeatedly tried to remove race as an issue in the case. It was defense counsel who repeatedly referred to race and questioned jurors about it. "The prosecutor took pains to tell the jurors that race had nothing to do with the case." *Johnson v. Vasquez*, No. CV 90–2033–WPG (GHK), U.S.Dist.Ct., C.D.Cal., Report and Recommendation of Magistrate Judge filed Sept. 10, 1991, p. 9.

the equivalent of finding that the prosecutor would have excused her regardless of any asserted improper motive. Remand is unnecessary. I would affirm.