2015 CO 54M

**The PEOPLE of the State of Colorado, Petitioner**

v.

**Derrick Demetrus WILSON, Respondent**

**Supreme Court Case No. 12SC1027**

Supreme Court of Colorado.

June 29, 2015

As Modified on Denial of Rehearing July 20, 2015

1128

Attorneys for Petitioner: Cynthia H. Coffman, Attorney General, Joseph G. Michaels, Assistant Attorney General, Denver, Colorado.

Attorney for Respondent: Carolyn A. Blanchard, Crested Butte, Colorado.

JUSTICE BOATRIGHT delivered the Opinion of the Court.

¶ 1 This case concerns the appropriate resolution of a *Batson* challenge. The petitioner, Derrick Demetrus Wilson, objected to the prosecutor's use of a peremptory strike to excuse a black veniremember and argued that the strike violated the Equal Protection Clause of the Fourteenth Amendment as interpreted in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The trial court then allowed the prosecutor to articulate a race-neutral reason for the strike. She explained that the prospective juror appeared uncomfortable with DNA evidence and the lack of eyewitness identification. Defense counsel responded that the prospective juror's responses indicated "the exact opposite," but the trial court accepted the prosecutor's explanation and denied Wilson's *Batson* challenge. The jury later found Wilson guilty of sexual assault, second-degree kidnapping, and unlawful sexual contact. Wilson appealed, and the court of appeals held that the trial court clearly erred in denying his *Batson* challenge. *People v. Wilson*, 2012 COA 163M, ¶ 3, —— P.3d ——, *as modified on denial of reh'g* (Nov. 29, 2012). The court of appeals noted that the record refuted the prosecutor's characterization of the prospective juror's voir dire and concluded that this inconsistency "necessarily establishe[d]" a *Batson* violation. *Id.* at ¶ 18.

¶ 2 We granted the People's petition for certiorari to review the court of appeals' determination of clear error, and we now reverse. We hold that a prosecutor's error in recollection does not compel a finding of purposeful discrimination in contravention of the Equal Protection Clause as interpreted in *Batson*. Rather, the *Batson* analysis requires the trial court to assess the credibility of the proponent of a peremptory strike and determine whether to believe her race-neutral explanation. Unless the opponent of the strike can prove purposeful discrimination, the trial court should deny the *Batson* challenge. On appeal, a reviewing court should defer to the trial court's credibility determination and reverse only for clear error. Because the trial court in this case did not clearly err by denying Wilson's *Batson* challenge, we reverse the judgment of the court of appeals and remand to that court for consideration of remaining issues on appeal.

## I. Facts and Proceedings Below

¶ 3 In August 2008, the Denver Police Department linked Wilson to a five-year-old cold case by matching his DNA to evidence recovered from the victim. As a result, the People charged Wilson with sexual assault, unlawful sexual contact, second-degree kidnapping, and three habitual offender counts. Wilson pleaded not guilty. When jury selection began, the court asked prospective jurors about their ability to serve on a jury, whether they knew any of the witnesses, and whether they could follow the court's instructions. The prosecutor then questioned prospective jurors about their impressions of DNA evidence, whether a victim's inability to identify her assailant would give them pause, and other matters related to the prospective jurors' attitudes toward Wilson's case.

¶ 4 Some members of the venire expressed misgivings about the reliability of DNA evidence; others were suspicious that the victim of a crime could not identify the perpetrator. Mr. E., a black man against whom the prosecutor exercised the challenged peremptory strike, had the following conversation with the prosecutor:

The prosecutor: Mr. E., ... [d]o you have confidence in scientific evidence?

Mr. E.: Yes, I do.

The prosecutor: And would it cause you any pause that the witness may not be able to identify her attacker?

Mr. E.: That would.

The prosecutor: Okay. Let's talk about that a little bit. Do you think there are crimes that are committed when nobody is around?

Mr. E.: Yes.

The prosecutor: Okay. And let's say, for example somebody broke into your house, you weren't there, so you became the victim of a burglary. But you weren't there, so you don't know who it was.

Mr. E.: Okay.

The prosecutor: If that person left a fingerprint or some DNA evidence behind, would you be comfortable in prosecuting that case?

Mr. E.: I think I would in that case, yes.

The prosecutor: Let's assume that in this case, the surprise—it's dark, and people don't get a good enough look at the attacker to make a positive identification. Does that ... in and of itself make you think that we can't prove these charges?

Mr. E.: Not in and of itself, no.

The prosecutor: Okay. If we can prove to you beyond a reasonable doubt identification via scientific evidence, not through eyewitness testimony, and you, of course, have to weigh the value of our evidence, but if we can do that, would you be comfortable in returning a verdict of guilty?

Mr. E.: I believe so.

¶ 5 After briefly questioning the next prospective juror, the prosecutor also asked Mr. N. about his confidence in DNA. Mr. N. initially stated that "there is a margin of error with DNA that is not beyond reasonable." But when the prosecutor asked if he could approach the process "with an open mind" and "be convinced that DNA is valuable evidence," Mr. N. replied that he "could be convinced if the margin of error is small enough."

¶ 6 After both sides finished questioning the jury, the prosecutor used her first peremptory strike to excuse Mr. E. Wilson's defense counsel immediately requested a bench conference, where he challenged the strike under *Batson* and argued that the prosecutor struck Mr. E. because of his race. The prosecutor responded by explaining her belief that Mr. E. might be unwilling to find Wilson guilty based on DNA evidence alone:

> The biggest concern was that [Mr. E.] was very uncomfortable with the lack of eyewitness identification. That he was not sure about the science of DNA, and if the victim could not identify someone ... the DNA in and of itself is not enough. I think I've already said this, but it was his discomfort with the DNA evidence and his concern about the ability to return a guilty verdict if, in fact, the victim could not do an eyewitness identification in the case.

The defense countered that Mr. E. had indicated "the exact opposite": that he was "comfortable" with DNA evidence and the lack of eyewitness identification. The court accepted the prosecutor's justification and denied Wilson's *Batson* challenge, stating:

> [I]n terms of the DNA, he kind of waffled back and forth. But what I heard specifically on the ID issue is that there was a general question where all the jurors said, Yeah, cases get decided every day, burglary for example, and [the prosecutor] used this with a different juror particularly; I can't remember this juror.
>
> He hesitated for an extended period, and when responding to the question about the ID and the inability of the complaining witness to make an ID of the suspect here, he indicated some concern or question about it.
>
> The Court is satisfied that the prosecution has stated an appropriate basis to excuse Mr. [E.] on that basis.

The prosecutor did not use any more peremptory challenges. Wilson, meanwhile exercised all six peremptory challenges to which he was statutorily entitled. *See* §§ 16–10–104, –105, C.R.S. (2014). Each time Wilson used a peremptory challenge, the prosecutor accepted the jury panel. Through this process, twelve jurors and one

alternate juror were selected. The record does not indicate the racial makeup of the jury.

¶ 7 Over the course of the five-day trial, the defense challenged the prosecutor's theory that Wilson was the attacker. Although a prosecution expert testified that there was a less than one-in-fifteen-trillion chance that the DNA found on the victim belonged to someone unrelated to Wilson, Wilson disputed the accuracy of these results. He also questioned witnesses about the victim's inability to identify her assailant. She could describe the man who attacked her only by his race, clothing, and car, and she had initially identified another man as her assailant, later telling police that a third man, whom she saw in a photographic lineup, had features similar to her assailant's. The jury nevertheless found Wilson guilty of sexual assault, unlawful sexual contact, and second-degree kidnapping. At a later hearing, the court designated Wilson a sexually violent predator, convicted him of three habitual offender counts in addition to the three substantive counts, and sentenced him to consecutive prison terms of ninety-six-years-to-life for sexual assault and ninety-six years for second-degree kidnapping, to run concurrently with a sentence of twenty-four-years-to-life for unlawful sexual contact.

¶ 8 On appeal, the court of appeals reviewed for clear error the trial court's determination that Wilson failed to prove racial discrimination in the prosecutor's peremptory strike of Mr. E. *Wilson*, ¶ 5. The court of appeals noted that the record refuted both of the prosecutor's stated reasons for the strike, observing that Mr. E. had stated during voir dire that he was confident in DNA evidence and willing to return a guilty verdict in the absence of eyewitness identification. *Id.* at ¶¶ 16–17. According to the court, this inconsistency "necessarily establishe[d] that those explanations were pretextual and were actually based on Mr. E.'s race." [1] *Id.* at ¶ 18. The court held that the strike violated the Equal Protection Clause as interpreted in *Batson* and then decided, as a matter of first impression in Colorado, that such an error is structural. *Id.* at ¶ 28. As a result, the court reversed the judgment of conviction and remanded Wilson's case for a new trial. *Id.* at ¶ 52.

¶ 9 We granted the People's petition for certiorari to consider the appropriate resolution of a *Batson* objection where the prosecutor's stated explanation for the challenged peremptory strike is inconsistent with the record. [2] We begin our analysis with an overview of the three-step *Batson* test, which is meant to uncover unconstitutional discrimination in the exercise of peremptory challenges. *See Batson*, 476 U.S. at 96–98, 106 S.Ct. 1712. Next, we focus on the final and dispositive step of the *Batson* analysis, where the trial court must determine whether the challenger has established purposeful discrimination. *See id.* at 98, 106 S.Ct. 1712. Then, turning to the facts of the instant case, we conclude that the trial court did not err when it accepted the prosecutor's race-neutral explanation for peremptorily striking Mr. E. and denied Wilson's *Batson* challenge. [3] We therefore reverse the decision of the court of appeals.

---

1. The court of appeals footnoted its conclusion that a *Batson* violation occurred with a codicil stating, "[W]e do not also conclude that the prosecutor acted out of racial animus. Rather, we only determine that the prosecutor's race-neutral explanations for challenging Mr. E. were not supported by the record." *Id.* at ¶ 28 n.2. We defer to the trial court's conclusion that the prosecutor did not strike Mr. E. because of the color of his skin and therefore do not consider whether racial animus inheres in every racially motivated decision.

2. Specifically, we granted certiorari to consider the following three issues:
 1. Whether the court of appeals erred in applying *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), by concluding that because a prosecutor's race-neutral explanations for challenging a prospective juror were inconsistent with the record, the record necessarily established that those explanations were pretextual.
 2. Whether the court of appeals failed to give deference to the trial court's two independent reasons for determining that the trial prosecutor did not exercise a peremptory challenge on impermissible grounds.
 3. Whether *Batson* violations are subject to harmless error analysis or constitute structural error.

3. As a result of our conclusion that no *Batson* violation occurred, we do not address whether such a violation constitutes structural error.

## II. *Batson* Prohibits Purposeful Racial Discrimination

■ ¶ 10 In *Batson,* the U.S. Supreme Court recognized that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." 476 U.S. at 89, 106 S.Ct. 1712. To implement this directive, the Court laid out a three-step analysis intended to uncover racial discrimination in the exercise of peremptory challenges by the prosecutor in a criminal case.[4] *Id.* at 96–98, 106 S.Ct. 1712. If the defendant can make out a prima facie case that the prosecutor struck a prospective juror on the basis of race, then, at the second step, the burden of production shifts to the prosecutor to proffer a race-neutral reason for excusing the prospective juror. *Id.* at 96–97, 106 S.Ct. 1712. After the defendant has a chance to rebut the prosecutor's explanation, the trial court determines, at the third step, whether the defendant has established purposeful discrimination by the prosecutor. *Id.* at 98, 106 S.Ct. 1712.

■ ¶ 11 Wilson contends that the trial court committed clear error in its step-three ruling because both the trial court and the prosecutor mischaracterized Mr. E.'s voir dire, raising an inference that the prosecutor struck Mr. E. because of his race. Wilson urges us to adopt and apply the court of appeals' rule that, where the record refutes the prosecutor's asserted race-neutral reasons for striking a prospective juror, the discrepancy "suggest[s] pretext sufficient for finding discriminatory purpose." *See Wilson,* ¶ 15. In some cases, however, a discrepancy between the prosecutor's justification and the record of voir dire can reflect a mistaken recollection rather than purposeful discrimination. *E.g., Hurd v. Pittsburg State Univ.,* 109 F.3d 1540, 1547 (10th Cir.1997), *abrogated on other grounds by Kimel v. Fla.*

*Bd. of Regents,* 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000). Therefore, after we describe the standard of review, we begin our analysis with an overview of the quantum of proof required to establish purposeful discrimination at the third step of the *Batson* analysis. Next, we examine the trial court's ruling in the instant case and determine that, under the deferential standard of review required at *Batson's* third step, the trial court did not clearly err by accepting the prosecutor's race-neutral reason for excusing Mr. E. from the jury panel.

### A. Standard of Review

■ ¶ 12 The standard of review "depends upon which step of the *Batson* analysis is before us." *Valdez v. People,* 966 P.2d 587, 590 (Colo.1998). The trial court in this case heard the prosecutor's race-neutral explanation and ruled on the ultimate issue of purposeful discrimination. The question of whether Wilson established a prima facie case at step one is therefore moot. *People v. Cerrone,* 854 P.2d 178, 186 n.13 (Colo.1993) (citing *Hernandez v. New York,* 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion)). Nor is step two before us, because Wilson concedes that the prosecutor offered a race-neutral explanation. We therefore focus on the third and final step of the *Batson* analysis: whether the opponent of the peremptory challenge proved purposeful discrimination. *Batson,* 476 U.S. at 98, 106 S.Ct. 1712.

■ ¶ 13 Describing step three, the *Batson* Court analogized to the standard of proof for sex discrimination under Title VII. *See id.* at 98 n.21, 106 S.Ct. 1712 (citing *Anderson v. City of Bessemer City,* 470 U.S. 564, 575–76, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). The Court stated that a trial court's step-three finding as to the existence of discrimination is due "great deference," as it "turn[s] on evaluation of credibility." *Id.*

---

4. The Supreme Court has since extended *Batson* to apply to situations where the challenger does not share the same race as the subject of the strike, *Powers v. Ohio,* 499 U.S. 400, 406, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); where the challenger is a civil litigant, *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 631, 111 S.Ct.

2077, 114 L.Ed.2d 660 (1991), or a criminal defendant, *Georgia v. McCollum,* 505 U.S. 42, 59, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992); and where the challenger alleges gender discrimination, *J.E.B. v. Alabama ex rel T.B.,* 511 U.S. 127, 129, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).

The inquiry at step three requires the trial court to decide whether to believe counsel's race-neutral explanation for a peremptory challenge. *Hernandez,* 500 U.S. at 365, 111 S.Ct. 1859. "[T]he best evidence often will be the demeanor of the attorney who exercises the challenge," evaluation of which lies "'peculiarly within a trial judge's province.'" *Id.* (quoting *Wainwright v. Witt,* 469 U.S. 412, 428, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)). We therefore review the trial court's factual determination at step three only for clear error. *Snyder v. Louisiana,* 552 U.S. 472, 477, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008); *accord Valdez,* 966 P.2d at 590.

### B. Errors in Recollection at Batson's Third Step

¶ 14 At step three, "the critical question" becomes "the persuasiveness of the prosecutor's justification for h[er] peremptory strike." *Miller–El v. Cockrell (Miller–El I),* 537 U.S. 322, 338–39, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). The trial court must gauge the prosecutor's credibility by evaluating her demeanor, how reasonable or improbable her explanations are, and whether her "proffered rationale has some basis in accepted trial strategy." *Id.* at 339, 123 S.Ct. 1029. If the prosecutor's asserted race-neutral reasons do not hold up, and "the racially discriminatory hypothesis" better fits the evidence, then the trial court must uphold the *Batson* challenge. *See Miller–El v. Dretke (Miller–El II),* 545 U.S. 231, 265–66, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005) (concluding, based on historical patterns of practice and the disparate treatment of black and white veniremembers during jury selection, that the prosecutor struck black potential jurors because of their race). Though the trial court must evaluate all relevant facts, "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett v. Elem,* 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995).

¶ 15 It is true that a prosecutor's mischaracterization of a prospective juror's voir dire testimony may indicate an ulterior, racial motive. *See, e.g., Miller–El II,* 545

U.S. at 244, 125 S.Ct. 2317 (concluding that counsel misrepresented a veniremember's inability to vote for death to disguise "an ulterior reason for keeping [him] off the jury"). Yet dissonance between a prosecutor's race-neutral explanation and the transcript of voir dire does not prove that the prosecutor lied to conceal racial discrimination. *See, e.g., Ford v. State,* 1 S.W.3d 691, 694 (Tex.Crim. App.1999) (holding that proof that an explanation was incorrect is insufficient to satisfy a *Batson* challenger's burden of persuasion). Most courts find other indications of racial motivation before concluding that race-neutral explanations belied by the record are pretextual. *See, e.g., Johnson v. Vasquez,* 3 F.3d 1327, 1330 (9th Cir.1993).

¶ 16 For example, in *Johnson,* the Ninth Circuit observed that the prosecutor initially justified his strike of a minority veniremember by pointing to defense counsel's strike of another minority veniremember, suggesting that race factored into the prosecutor's decision-making. *Id.* at 1330. The prosecutor also gave four, facially race-neutral reasons for his strike. *Id.* Only after the court noted that the prosecutor's initial explanation raised "a strong indication" of racial bias did it compare the record to the prosecutor's other stated reasons. *Id.* at 1329, 1330. Then, concluding that the record either undermined or did not support each of the prosecutor's four race-neutral reasons, the court held that those reasons were pretext for racial discrimination. *Id.* at 1330; *see also Flowers v. State,* 947 So.2d 910, 923–26 (Miss.2007) (holding that the trial court erred in denying the defendant's *Batson* challenge where the prosecutor's main reason for striking a black veniremember applied with equal force to a white veniremember whom the prosecutor accepted and the record refuted another of the prosecutor's reasons for striking the black veniremember).

¶ 17 Standing alone, however, proffered reasons that are contradicted by the record do not imply pretext but can instead reflect mistaken recollection. In *Hurd,* the Tenth Circuit explained that a shortcut linking a mistaken reason to a pretextual reason conflates the second and third steps of the

*Batson* analysis. 109 F.3d at 1547. To pass muster at step two, the strike proponent's explanation need not be "persuasive, or even plausible," as long as it is race-neutral. *Purkett,* 514 U.S. at 768, 115 S.Ct. 1769. But at step three, the challenger must "convince the [trial] court that the reason proffered for the strike was unworthy of belief *and* that the strike was racially motivated." *Hurd,* 109 F.3d at 1548. In *Hurd,* counsel justified his strike of the only black veniremember by stating that the man previously found for a railroad employee in a civil case. *Id.* at 1546–47. As opposing counsel and the trial court immediately pointed out, however, the veniremember had stated that he served on a civil jury that reached a verdict, but he never said that the jury had rendered a verdict for the plaintiff. *Id.* at 1547. The trial court, having observed the attorney's demeanor "at length," determined that, despite the attorney's error in recollection, "he had truthfully represented his belief . . . and had not struck the [prospective] juror because of the color of his skin." *Hurd v. Pittsburg State Univ.,* 892 F.Supp. 245, 248 (D.Kan.1995). The Tenth Circuit deferred to the trial court's finding that counsel for the university made an honest mistake and held that the plaintiff had not proved facts sufficient to establish purposeful discrimination. *Hurd,* 109 F.3d at 1548.

■■■ ¶ 18 The court of appeals' contrary view in this case, which labels as pretext any justification unsupported by the record, elevates an appellate court's review of a cold record above the trial court's firsthand observation of the proceedings and the attitude of the participants. Only the trial court can assess non-verbal cues, such as hesitation, voice inflection, and facial expressions, that are not recorded on a transcript. The court of appeals' method also creates a presumption that arrogates the trial court's step-three duty to distinguish between sham excuses that violate the Equal Protection Clause and bona fide, race-neutral explanations for a peremptory strike. *See Hernandez,* 500 U.S. at 365, 111 S.Ct. 1859; *Batson,* 476 U.S. at 98 n.21, 106 S.Ct. 1712. Such a regime is at odds with the U.S. Supreme Court's *Batson* jurisprudence, which acknowledges the "pivotal role" of the trial

court in evaluating the credibility and demeanor of both the prosecutor and the prospective juror. *Snyder,* 552 U.S. at 477, 128 S.Ct. 1203; *see also Valdez,* 966 P.2d at 599 (Kourlis, J., dissenting) ("Discrimination is as sly as it is insidious. It lives in inference, tone, and gesture as much as in action."). The *Batson* analysis exists to expose and prevent racial discrimination in jury selection, "not to test [a] prosecutor's memory." *People v. Jones,* 51 Cal.4th 346, 121 Cal. Rptr.3d 1, 247 P.3d 82, 99 (2011). When an appellate court presumes racial motivation any time a prosecutor misremembers a prospective juror's voir dire testimony, it discounts the possibility that the error was a result of an innocent transposition—and that race did not motivate the strike.

### C. The Prosecutor Did Not Base Her Peremptory Strike on the Prospective Juror's Race

■■■ ¶ 19 The prosecutor in this case explained that she excused Mr. E. for two facially race-neutral reasons: (1) his "discomfort" with DNA evidence and (2) his inability to return a guilty verdict without eyewitness identification. In rebuttal, the defense argued that Mr. E.'s responses indicated that he was both comfortable with DNA and "would have no problem with the alleged victim not being able to identify" her attacker. After listening to the prosecutor's explanation and Wilson's rebuttal, the trial court noted its own impression of Mr. E. The court observed that Mr. E. "waffled back and forth" in response to the prosecutor's questions about DNA evidence and "hesitated for an extended period" before answering questions about the lack of eyewitness identification. Although the trial court never uttered the magic words "no purposeful discrimination," it concluded that the prosecutor had articulated "an appropriate basis to excuse [Mr. E.]." The court therefore denied Wilson's *Batson* challenge.

¶ 20 The court of appeals disagreed and held that the trial court erred by denying Wilson's *Batson* challenge because the prosecutor's account of Mr. E.'s responses conflicted with the transcript of voir dire. *Wilson,* ¶¶ 16–17. While the court of appeals correct-

ly noted the variance, it failed to credit the trial court's finding that Mr. E. "hesitated for an extended period" because it concluded that the record refuted the court's other finding: that Mr. E. "waffled back and forth" with respect to his confidence in DNA evidence. *Id.* at ¶ 19. The court of appeals decided that the incongruity between the transcript of Mr. E's responses and the prosecutor's account of voir dire indicated a discriminatory purpose behind the prosecutor's peremptory strike of Mr. E. *Id.* at ¶ 18.

¶ 21 The record of voir dire does not, however, carry the weight that the court of appeals assigned to it. Asked about the persuasiveness of DNA evidence and the·absence of eyewitnesses to a crime, Mr. E.'s answers arguably indicated skepticism: He gave appropriate responses, but used qualifiers like, "in that case," "[n]ot in and of itself," and, "I believe so." Furthermore, he answered affirmatively when the prosecutor asked him if a witness's inability to identify her attacker would "cause [him] any pause." The prosecutor interpreted these responses as indications that Mr. E. was "uncomfortable" with DNA evidence and might not be willing to return a guilty verdict if the victim could not identify her attacker. Her intuition that Mr. E. might not be a suitable juror in a case based extensively on DNA evidence, where the victim could not identify the defendant, was both reasonable and grounded in trial strategy. *See Miller–El I,* 537 U.S. at 339, 123 S.Ct. 1029 ("Credibility can be measured by ... how reasonable, or how improbable, the explanations are[ ] and by whether the proffered rationale has some basis in accepted trial strategy."); *cf. Batson,* 476 U.S. at 97, 106 S.Ct. 1712 (emphasizing that "the prosecutor's· explanation need not rise to the level justifying exercise of a challenge for cause").

¶ 22 Wilson nevertheless claims that the prosecutor's reasons for excusing Mr. E. better fit other prospective jurors, like Mr. N., who was leery of the "margin of error with DNA." At the time of the *Batson* challenge, Wilson argued only that, contrary to the prosecutor's explanation, Mr. E. was comfortable with DNA evidence and the lack of eyewitness identification. No further record

was made. Wilson never claimed that the prosecutor treated similarly situated veniremembers differently based on their race, and we decline to resolve such a claim raised for the first time before this court. *Valdez,* 966 P.2d at 594; *see also Snyder,* 552 U.S. at 483, 128 S.Ct. 1203 ("[A] retrospective comparison of jurors based on a cold appellate record may be very misleading when alleged similarities were not raised at trial."). At most, the record suggests that the prosecutor may have misremembered Mr. E.'s voir dire.

¶ 23 The prosecutor's possible erroneous recollection does not, however, evince the purposeful discrimination that *Batson* prohibits. *See* 476 U.S. at 98, 106 S.Ct. 1712. The prosecutor may have made a mistake, but that is insufficient to prove that race motivated her decision to strike Mr. E. *Cf. Hurd,* 109 F.3d at 1548. Having observed the prosecutor's demeanor firsthand, the trial court concluded that she stated "an appropriate basis" for excusing Mr. E. The court thus implicitly found that the prosecutor was credible and that her race-neutral explanation for excusing Mr. E. was sincere. *See Miller–El I,* 537 U.S. at 338–39, 123 S.Ct. 1029. These findings deserve deference because "[t]he trial judge is the judicial officer who watches and listens as voir dire unfolds, and who can discern the presence or absence of discriminatory intent." *Valdez,* 966 P.2d at 599 (Kourlis, J., dissenting). Although the prosecutor's justification may appear discordant with the record, the trial court in this case did not commit clear error by believing her race-neutral explanation and denying Wilson's *Batson* challenge.

### III. Conclusion

¶ 24 Accordingly, we reverse the judgment of the court of appeals and remand the case to that court for consideration of the remaining issues on appeal. We hold that a prosecutor's error in recollection does not compel a finding of purposeful discrimination in contravention of the Equal Protection Clause as interpreted in *Batson.* Rather, the third step of the *Batson* analysis requires the trial court to assess the credibility of the propo-

nent of a peremptory strike and determine whether to believe her race-neutral explanation. Unless the opponent of the strike can prove purposeful discrimination, the trial court should deny the *Batson* challenge. On appeal, a reviewing court should defer to the trial court's credibility determination and reverse only for clear error.

JUSTICE MÁRQUEZ concurs in part and dissents in part.

JUSTICE MÁRQUEZ, concurring in part and dissenting in part.

¶ 25 I agree with the majority that a prosecutor's inaccurate recollection of a potential juror's voir dire response is insufficient, standing alone, to prove that the prosecutor's peremptory strike of that juror was racially motivated. *See* maj. op. ¶¶ 2, 24. I also agree with the majority that the court of appeals erred by concluding that the record's refutation of the prosecutor's proffered race-neutral reason for the strike necessarily established a *Batson* violation. *See id.* at ¶ 18. I write separately, however, because the record before us does not demonstrate that the trial court actually conducted step three of the *Batson* analysis. When a trial court conducts an inadequate *Batson* analysis, "the appropriate procedure is to remand the case for more detailed findings by the trial court." *Craig v. Carlson*, 161 P.3d 648, 654 (Colo. 2007); *see also People v. Rodriguez*, 2015 CO 55, ¶ 22, 351 P.3d 423. Unlike the majority, I would remand this case for a *Batson* hearing and more particular findings. I therefore respectfully concur in part and dissent in part.

¶ 26 I begin with a brief overview of the facts of this case before explaining why I believe that the record before us warrants a remand for a *Batson* hearing.

¶ 27 During voir dire, the prosecutor asked prospective jurors a series of questions to elicit whether they could return a guilty verdict based on a DNA match if the alleged rape victim could not identify her attacker. When the prosecutor reached Mr. E., who is black, she asked him, "Do you have confidence in scientific evidence?" Mr. E. responded, "Yes, I do." He admitted that the lack of eyewitness identification might give him pause, but when the prosecutor asked him whether he could find the defendant guilty if the People proved their case using scientific evidence, Mr. E. replied, "I believe so."

¶ 28 The prosecutor used only one peremptory strike, which she exercised against Mr. E. Defense counsel immediately raised a *Batson* challenge. The prosecutor explained that she struck Mr. E. because of his "discomfort with the DNA evidence and his concern about the ability to return a verdict of guilty if, in fact, the victim could not do an eyewitness identification." Defense counsel pointed out that Mr. E. in fact "said the exact opposite" about DNA evidence. The trial court nevertheless excused Mr. E.

¶ 29 To use a peremptory strike to remove a potential juror solely because of that juror's race violates the Equal Protection Clause of the Fourteenth Amendment. *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *Batson*'s three-step analysis is designed to uncover whether a peremptory strike reflected "purposeful discrimination." [1] *Id.* at 96–98, 106 S.Ct. 1712. If the record of voir dire is clear, an appellate court can review whether a trial court correctly performed a *Batson* analysis. *See, e.g., Snyder v. Louisiana*, 552 U.S. 472, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008). But

---

1. "Purposeful discrimination" in this context does not require racial animus, i.e., ill will or animosity toward a racial minority, *see Black's Law Dictionary* 107 (10th ed. 2014). However, a strike is "racially motivated" where it is based on the juror's race—for example, striking a black veniremember in the hopes of increasing the likelihood of a favorable verdict. *See Batson*, 476 U.S. at 89, 106 S.Ct. 1712 ("Although a prosecutor ordinarily is entitled to exercise permitted peremptory challenges for any reason at all ... the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." (internal quotation marks omitted)); *United States v. Brown*, 817 F.2d 674, 676 (10th Cir.1987) (finding an Equal Protection violation where the government exercised peremptory challenges against black veniremembers because the prosecutor "simply presumed from his previous experience" that black jurors would be influenced by a black defense counsel to acquit the defendant).

where the record does not present a clear picture, a reviewing court must be cautious when affirming or reversing the trial court, given that "a cold appellate record may be very misleading." *Id.* at 483, 128 S.Ct. 1203.

¶ 30 The trial court's ruling on Wilson's *Batson* challenge was cursory. The court stated that, "in terms of the DNA, [Mr. E.] kind of waffled back and forth." The court also observed that Mr. E. "hesitated for an extended period" and "indicated some concern or question" about the lack of witness identification. The court then summarily concluded that it was "satisfied that the prosecution [ ] stated an appropriate basis to excuse" Mr. E.

¶ 31 The majority correctly concludes that our focus here must be on the third step of the *Batson* analysis: the trial court's determination of the credibility of the proffered race-neutral explanation for the strike, and its finding whether the opponent has established purposeful discrimination. Maj. op. ¶ 12; *see also Miller–El v. Cockrell*, 537 U.S. 322, 339, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); *Batson*, 476 U.S. at 98 & n.21, 106 S.Ct. 1712. The record before us, however, does not establish that the trial court conducted this third step. The majority, in my view, draws unsupported inferences from an ambiguous record. I believe that this ambiguity warrants a remand.

¶ 32 First, the trial court's credibility evaluation is suspect. "[A] trial court's step-three finding as to the existence of discrimination is due 'great deference' " precisely because it "turn[s] on evaluation of credibility." [2] Maj. op. ¶ 13 (quoting *Batson*, 476 U.S. at 98 n.21, 106 S.Ct. 1712); *see also Miller–El*, 537 U.S. at 338–39, 123 S.Ct. 1029. "[T]he challenger must 'convince the [trial] court that the reason proffered for the strike was unworthy of belief....' " Maj. op. ¶ 17 (quoting *Hurd v. Pittsburg State Univ.*, 109 F.3d 1540, 1548 (10th Cir.1997)).

¶ 33 Here, the court did not, and indeed could not, evaluate the prosecutor's credibility because it had the same inaccurate recollection as the prosecutor regarding Mr. E.'s comfort with DNA evidence. The trial court thus could not tell if the prosecutor's proffered reason "was unworthy of belief" because the court itself did not correctly recall Mr. E.'s statements. When defense counsel tried to point out that Mr. E.'s answers indicated the "exact opposite" of the prosecutor's recollection, the court cut off discussion and made its ruling. Defense counsel was given no opportunity to establish that the stated basis was, in fact, refuted by Mr. E.'s actual statements. Although the court's observation that Mr. E. hesitated before answering questions is precisely the type of finding that trial courts should make when considering a proponent's reason for striking a juror, the court's confusion about Mr. E.'s actual statements calls into question the accuracy of the trial court's memory of voir dire.

¶ 34 Second, the court did not actually find that the prosecutor did not remove Mr. E. based on his race. As the majority points out, "the trial court never uttered the magic words 'no purposeful discrimination,' " maj. op. ¶ 19; instead, the court merely concluded that the prosecutor "stated an appropriate basis" for the strike. But a proponent's "appropriate basis" (i.e., race-neutral reason) is a *Batson* step-two finding. Nothing in the record confirms that the trial court reached step three, considered the prosecutor's credibility, and actually found that there was no purposeful discrimination.

¶ 35 That the trial court did not complete step three of the analysis would be reason enough, in my view, to remand for a proper *Batson* hearing. However, my conclusion that this case warrants further scrutiny is bolstered by the fact that another veniremember, who voiced real skepticism about DNA evidence, was in fact empaneled with

**2.** The majority ascribes to the trial court a "pivotal role" in evaluating "the credibility and demeanor of both the prosecutor *and the prospective juror.*" Maj. op. ¶ 18 (emphasis added) (citing *Snyder*, 552 U.S. at 477, 128 S.Ct. 1203). While *Snyder* supports the proposition that a trial court must evaluate the challenged

juror's *demeanor* to determine whether the juror demonstrated the proffered basis for the strike, it is the credibility of the *proponent of the strike*—not the veniremember—that is at issue at *Batson*'s step three. *See Snyder*, 552 U.S. at 477, 128 S.Ct. 1203; *see also Miller–El*, 537 U.S. at 338–39, 123 S.Ct. 1029.

the prosecution's assent. During voir dire, Mr. M. initially stated that he believed DNA evidence works. The prosecutor asked him whether he could return a guilty verdict based on DNA evidence, and he responded, "I think I can." However, under defense counsel's questioning, Mr. M. elaborated that he believed that the DNA *in Wilson's case* was suspect because it was from 2003, more than six years before the trial:

> But from 2003, there is a problem, you know. DNA did not work that well because if you have DNA now, why should you go back 2003 [sic] until today to see if he's guilty? You know. So I think maybe that there was a problem with the DNA.

¶ 36 The majority acknowledges that where a proponent's race-neutral reason for striking a member of a racial minority applies "with equal force" to another, unchallenged veniremember, it raises the question of racial bias. Maj. op. ¶ 16 (citing *Flowers v. State*, 947 So.2d 910, 923–26 (Miss.2007)). I recognize that it can be a tricky endeavor to conduct a comparative juror analysis on a cold appellate record to resolve whether the prosecutor treated similarly situated veniremembers differently based on their race. Maj. op. ¶ 22. *But see Snyder*, 552 U.S. at 483–85, 128 S.Ct. 1203 (conducting a retrospective comparison of potential jurors and concluding that the prosecution's proffered race-neutral explanation gave rise to an inference of discriminatory intent where similarities between the jurors were explored at trial). Yet this is precisely why this case warrants a remand. Did the prosecutor treat a similarly situated juror differently than Mr. E.? Was the prosecutor's proffered race-neutral reason pretextual, or did the trial court find that the prosecutor was credible? Most importantly, did the trial court actually find that there was no purposeful discrimination? Absent a remand for a *Batson* hearing, we cannot know.

¶ 37 After accepting the trial court's perfunctory conclusion that the prosecutor articulated "an appropriate basis" to strike Mr. E., the majority concludes that, "[a]t most, the record suggests that the prosecutor may have misremembered Mr. E.'s voir dire." Maj. op. ¶ 22. I disagree. The record suggests that the prosecutor removed Mr. E. on a basis that applied with equal, if not greater, force to another juror whom the prosecution allowed to remain on the jury. Perhaps the discrepancy between the prosecutor's recollection and Mr. E.'s actual voir dire responses reflects no more than mistaken recollection. But on this record, we simply cannot tell. That the prosecution chose *not* to strike another juror who actually *did* express uncertainty about DNA evidence calls into question the validity of the prosecutor's explanation for striking Mr. E. Importantly, the record before us does not conclusively show that the trial court actually completed step three of the *Batson* analysis. Indeed, the trial court could not have completed this step, given that it accepted the prosecutor's mischaracterization of Mr. E.'s statements.

¶ 38 Because "the proper remedy for an inadequate inquiry into a *Batson* challenge at the time of jury selection is to remand the case to the trial court with directions to conduct the three-part *Batson* analysis and make the required factual findings," *Rodriguez*, ¶ 22, I would remand this case. Therefore I respectfully concur in part and dissent in part.