25CA0545 Marriage of Schulte 05-21-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0545
Kit Carson County District Court No. 21DR30005
Honorable Carl S. McGuire III, Judge

In re the Marriage of

Keith Raymond Schulte,

Appellant,

and

April Danielle Schulte,

Appellee.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE JOHNSON
Freyre and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 21, 2026

Epstein Patierno, LLP, Wendy J. Smock, Robert W. Voorhees, Denver,
Colorado, for Appellant

No Appearance for Appellee

¶ 1    In this post-dissolution of marriage appeal, Keith Raymond Schulte (father) appeals the district court's judgment restricting his parenting time. We affirm.

## I.    Background

¶ 2    Father and April Danielle Schulte (mother), who divorced in September 2021, have five children together. As part of their legal separation agreement, the parties stipulated that the children would be in the care of mother "at all times that the children are not with their father" and in the care of father at "all times that [they] are not with their mother" (original parenting time plan). This arrangement was characterized by both parties and the court as 50-50 or "roughly equal" parenting time. But the arrangement was fluid, with mother having the children during school when father was working, and father taking them when he had time. When the original parenting time plan was adopted, both parties resided in the town of Flagler.

¶ 3    Approximately two years after the divorce, in January 2024, father filed a motion concerning parenting time disputes pursuant to section 14-10-129.5, C.R.S. 2025, alleging that mother had moved to Colorado Springs with the three younger children (the

1

younger children) in violation of the original parenting time plan. In March 2024, the court held a hearing on father's motion, at which mother testified that she continued to reside primarily in Flagler and only lived in Colorado Springs when the children were with their father. The court also heard testimony that father had not been sober while caring for the children and that one of the younger children had been injured in father's care. After the injury occurred, the younger children left father's home with one of the older children, and father sent mother threatening texts and voicemails.

¶ 4      The court ordered that the original parenting plan be maintained for the two oldest children. But it required father to have the younger children on alternating weekends over a four-week period, from Friday afternoon until Sunday afternoon. For these visits, father was required to provide sobriety tests once on each Friday, and twice on each Saturday and Sunday. The court also adopted the parties' safety plan for parenting time, which included paternal grandmother "be[ing] in the home from 4pm to 8am during the week," when the older children were home from school, and "the entirety" of the younger children's stay on the

2

weekend. After the four weeks, the original, unsupervised parenting time plan would resume, but father was to complete random sobriety testing in addition to testing before each Monday exchange of the children.

¶ 5 In April 2024, before father's parenting time returned to the original schedule, mother filed a motion to restrict father's parenting time pursuant to sections 14-10-129(1)(b)(I) and 14-10-129(4), C.R.S. 2025. She alleged that father was not complying with sobriety testing or parenting time supervision. She also alleged that, while he was intoxicated, father had allowed the two older children access to marijuana gummies. The court immediately required father's parenting time to be supervised by "a mutually-agreeable third party or by a licensed mental health professional or agency." Mother also requested that the court appoint a child legal representative (CLR) for the children, which the court did.

¶ 6 The court continued the hearing on the motion to restrict so it could hold an in camera interview with the children. The in camera interview occurred in June 2024.

¶ 7 Over two days in October and November 2024, the court held the hearing on mother's motion to restrict. Afterward, the court ended the supervision requirement for the two older children and imposed an every other week schedule for their parenting time with father. But it concluded that returning the younger children to the original, 50-50 unsupervised parenting plan "would place the children in an environment that would endanger their physical health or impair their emotional development," and it ordered a "step-up plan" to increase father's parenting time with them to every other weekend unsupervised. Parenting time was to be supervised, initially, by paternal aunts and uncles and then would become unsupervised. Father would continue sobriety testing for four months and, after that, he would have to complete a sobriety test only at mother's request.

¶ 8 Father filed a motion for post-trial relief pursuant to C.R.C.P. 59, which the court denied.

## II. Restriction of Father's Parenting Time

¶ 9 Father argues that the district court incorrectly applied the best interests standard when it entered its order restricting his parenting time. We perceive no error.

4

## A. Standard of Review and Applicable Law

¶ 10 The district court has discretion to determine parenting time, and we will not disturb its decisions absent an abuse of discretion. *See In re Marriage of Hatton,* 160 P.3d 326, 330 (Colo. App. 2007) (discussing parenting time modification). Whether the court applied the correct legal standard is a question we review de novo. *In re Parental Responsibilities Concerning S.Z.S.,* 2022 COA 105, ¶ 11.

¶ 11 Section 14-10-129(1)(b)(I), commonly referred to as the endangerment standard, applies to all motions to restrict parenting time. It reads,

> The court shall not restrict a parent's parenting time rights unless it finds that the parenting time would endanger the child's physical health or significantly impair the child's emotional development. In addition to a finding that parenting time would endanger the child's physical health or significantly impair the child's emotional development, in any order imposing or continuing a parenting time restriction, the court shall enumerate the specific factual findings supporting the restriction.

In other words, the district court must first find endangerment and then must make specific findings supporting its decision to impose

or continue a parenting time restriction. *In re Marriage of Thorburn*, 2022 COA 80, ¶ 38.

¶ 12    Section 14-10-129(4) allows a parent to obtain a parenting time restriction on an emergency basis. Upon filing a sufficient section 14-10-129(4) motion, a court must set an emergency hearing within fourteen days and any parenting time occurring in that time must be supervised. *Thorburn*, ¶ 40. Once a hearing is held, the court applies section 14-10-129(1)(b)(I)'s general endangerment standard. *Id.* Father does not contest that the court satisfied the requirements of section 14-10-129(4).

### B.    Analysis

¶ 13    In its order, the court cited section 14-10-129(1)(b)(I) and correctly indicated that it could not restrict father's parenting time "unless it [found] that the parenting time would endanger the [younger] children's physical health or significantly impair their emotional development." The court also correctly stated that it needed to make "specific factual findings supporting that restriction." The court then granted mother's motion and continued restrictions on father's parenting time with the younger three children. The court included a step-up plan to end supervision and

6

to ultimately provide father with every other weekend parenting time with them.

¶ 14    It found that returning "to a 50[-]50 parenting plan would place the [younger] children in an environment that would endanger their emotional development."  It then made specific findings, supported by the record, justifying an ongoing restriction of father's parenting time.  These findings included the following:

- Father has a "longstanding" history of alcohol abuse.

- In January 2024, one of the younger children was injured while in father's care and, when that injury occurred, father had been drinking.

- Father drank alcohol in the car while driving the children.

- Father sometimes passed out drunk on top of or near the sleeping younger children.

- 50-50 contact with father would overwhelm the younger children, who have spent "more time with [m]other, even before the motions were filed."

¶ 15    These findings support the court's conclusion that father's parenting time could be restricted pursuant to section 14-10-

129(1)(b)(I).  The court applied the proper endangerment standard and did not abuse its discretion in reaching its conclusion.

### C.   Additional Related Arguments

¶ 16    Father also argues that the court's use of phrases such as "the [c]ourt believes" instead of "the court finds" forces us to conclude that it made no specific factual findings as required by section 14-10-129(1)(b)(i) and C.R.C.P. 52.  We disagree.  Although the court did not always use the word "find," it explicitly stated that it needed to make findings and pointed out the record evidence it determined to be credible and upon which it was basing its ruling; no "magic words" were necessary for us to determine its findings on appeal.  *See City and Cnty. of Denver v. Indus. Comm'n*, 690 P.2d 199, 203 (Colo. 1984) (findings of evidentiary fact involve "the raw, historical data underlying the controversy"); *see also People v. Wilson*, 2015 CO 54M, ¶ 19 (so long as the record supports their rulings premised on findings of fact, district courts are not required to use "magic words" for their decisions to be upheld on appeal).

¶ 17    Father further argues that the court improperly applied a best interests standard.  True, the court explicitly relied on section 14-10-124(1.5)(a), C.R.S. 2025 (requiring a court to allocate parental

responsibilities according to the child's best interests), when it created the step-up plan for the younger children "to get back to more normal contact with their father." But given that the court had *already* determined that the younger children's emotional development would be impacted by a 50-50 parenting schedule with father pursuant to the endangerment standard, the court's later application of a best interests standard in reaching the same conclusion did not prejudice father. *See Jimerson v. Prendergast,* 697 P.2d 804, 807 (Colo. App. 1985) (defect is harmless error when no prejudice is alleged). It is, therefore, harmless. *Id.*

### III.   In Camera Interview Transcript

¶ 18   Father alleges that the district court erred, violating his right to due process, when it did not allow him to access a transcript of the children's in camera interview before its hearing on mother's motion to restrict. He claims that "the transcript forms a critical component of the evidentiary record."

¶ 19   To preserve an issue for appeal, a party must give the court fair notice of an objection to allow the court a "meaningful chance to prevent or correct the error." *People v. Smalley,* 2015 COA 140, ¶ 81 (citation omitted). Father never notified the district court

about any constitutional or procedural concerns with the court's handling of the in camera interview. Father's request for a record pursuant to section 14-10-126(1), C.R.S. 2025, was for a summary *or* a transcript — and the district court provided a summary. Similarly, father never argued to the district court that the CLR's presence at the in camera interview implicated his due process rights and necessitated the release of a transcript. As a result, father did not alert the court to the contentions he now raises — that only a transcript could suffice — and the court did not have an opportunity to address it.

¶ 20 Because father did not preserve his contentions on this issue, we will not address it further. *In re Marriage of Ensminger*, 209 P.3d 1163, 1167 (Colo. App. 2008) (declining to address an argument raised for the first time on appeal).

## IV. Conclusion

¶ 21 The judgment is affirmed.

JUDGE FREYRE and JUDGE KUHN concur.